[Civ. No. 5267.   Third Appellate District.—March 13, 1935.]

PETE HAIDOPOULOS et al., Appellants, v. A. E. WOOLLETT et al., Respondents.

H. G. Bittleston and L. W. Jaycox for Appellants.

Zach Lamar Cobb and Earl A. Littlejohns for Respondents.

WOODWARD, J., *pro tem.*—Specific performance of an agreement for the exchange of real property was denied plaintiffs and they appeal from the judgment, which was in favor of the defendants on all the issues joined.

Omitting unnecessary minutiae, the facts of the controversy may be epitomized as follows: On March 19, 1932, the parties executed a written contract under the terms of which plaintiffs' ten-acre citrus grove, situated near Yuma, Arizona, was to be exchanged for defendants' ten-unit bungalow, situated in Los Angeles County, together with $1500 in cash. The Arizona property was to be conveyed free of encumbrance, with the exception of a lien for taxes, while the bungalow court and furnishings were to be accepted subject to a secured indebtedness of $10,500. Immediately upon the execution of the agreement it seems that each of the parties gave the other possession, and they then proceeded to open a thirty-day escrow with the Citizens National Trust & Savings Bank of Los Angeles. On April 12, 1932, by mutual consent, the escrow instructions originally filed were

amended, a defect in plaintiffs' title having been discovered and an adjustment of the matter determined upon. This amendment provided that plaintiffs should have an extension of six months in which to clear the title from a cloud cast thereon by the recordation of a previously executed agreement of exchange between ''Pete'' Haidopoulos and Orin A. Pearce. Shortly thereafter another amendment was made, the effect of which was that defendants, in lieu of the cash payment of $1500, would execute a promissory note to plaintiffs in the sum of $481.10 and accept a conveyance to the citrus grove subject to a mortgaged indebtedness of $1500. The original agreement having been thus modified, it seems that the parties were at last ready to consummate the transaction, each having deposited all necessary papers with the bank; but thereafter, on April 29, 1932, the Security Title Company of Yuma, Arizona, advised the escrowee of eight additional defects in plaintiffs' title, chief of which was a reservation by a previous grantor, whereby plaintiffs' purported ten acres were diminished by .38 acre. Defendants, after being informed of this development, waited until May 23, 1932, at which time they served plaintiffs with a notice of rescission, setting forth the various defects of title as grounds therefor. Plaintiffs thereupon commenced the present action for specific performance. The answer sets forth a number of defenses, including failure of plaintiffs to comply with the terms of the agreement within the time specified, or within a reasonable time thereafter; and fraud on the part of plaintiffs and their agent in obtaining defendants' consent to said agreement and escrow instructions.

The court made the following finding: ''That it is not true that said contract of exchange, or the terms or conditions thereof were, or are, in all respects just, fair and equitable between the parties, and in that connection the court finds that the said contract is not just and reasonable as to the defendants herein, and that they were not to receive an adequate consideration by said exchange agreement. The court further finds that the defendants' property, as set forth and described in said exchange agreement, being the real property at Santa Monica, together with the furniture and furnishings therein was, on March 19, 1932, of the value of $16,859.57; that said property was subject to a first

mortgage of $10,500.00, and that defendants had a net equity in said property of the value of $6,359.57. That the plaintiffs' property at Yuma, Arizona, on said 19th day of March, 1932, was of the value of $2,000.00, and that according to said exchange agreement the defendants were trading their property at Santa Monica, with an equity of $6,359.57 and $1,500.00 cash, for the plaintiffs' property with only a value of $2,000.00, and that thereby the consideration as to the defendants was not adequate, and said contract was not just and reasonable." The other findings adopted by the court sustained each of the several defenses.

The contract was silent as to the value of either the citrus grove or the bungalow court. With reference to the value of the former property plaintiffs called · Hugh Palmer, a resident of Yuma, who testified that he was familiar with the citrus grove, having taken care of it during the few months that defendants had it; that the grove, consisting of approximately 7½ acres of oranges and 2½ acres of grapefruit, was "in good condition", and had a reasonable value, at the time the contract was executed, of $1500 an acre. *Plaintiffs introduced no evidence whatever as to the value of the Woollett property at Santa Monica.* Such proof, it seems to us, was indispensable to plaintiffs' cause of action, and its absence would have justified a motion for a nonsuit. Section 3391 of the Civil Code provides that specific performance cannot be enforced against a party to a contract "if he has not received an adequate consideration" for the same, or, "if it is not, as to him, just and reasonable".

As pointed out in the case of *Porter* v. *Anderson*, 14 Cal. App. 716, 721 [113 Pac. 345, 347]: "The Code rule, as it is thus given is only a legislative reaffirmation of the rule as to the remedy of specific performance as it has always been recognized and practised in courts of equity. Unless the contract is perfectly fair, equal and just in its terms and in its circumstances, a court of equity will incontinently refuse to specifically enforce it. And a natural concomitant of this unassailable and well-understood proposition is the rule that a party seeking to invoke this equitable remedy must *plead as well as prove* that the obligation is just and reasonable as to the party against whom he asks its specific

enforcement." (See, also, *Windsor* v. *Miner*, 124 Cal. 492 [57 Pac. 386]; *Martin* v. *Condrey*, 13 Cal. App. 618 [110 Pac. 457]; *Rittigstein* v. *Dignan*, 122 Cal. App. 357 [9 Pac. (2d) 856]; *Bonney* v. *Petty*, 125 Cal. App. 527 [13 Pac. (2d) 969].)

In the absence of an admission in the answer that the contract is fair and supported by an adequate consideration, it is manifestly incumbent on a party seeking specific performance, to affirmatively show that his right to the remedy is not barred by the code section quoted. And he is not relieved of this duty merely because the defendant relies on fraud as one of several affirmative defenses. (*Windsor* v. *Miner, supra*.) If the allegations of the complaint as to fairness and adequacy of consideration are properly traversed by the answer, an issue of fact has been joined and plaintiff is put upon his proof. In the instant case the proof undoubtedly stopped short of the goal. How could the court have determined the equity of the transaction without evidence as to the value of the Santa Monica property? But the defendants, instead of relying on the patent deficiencies of plaintiffs' case, as they could have done, proceeded to offer evidence on the question of value and also in support of their several affirmative defenses. W. H. Fitchmiller, a real estate broker of Santa Monica, testified that he was familiar with realty values in Santa Monica; that he knew the Woollett apartments and had appraised the same; that the property, including the furnishings, had a market value, as of March 19, 1932, of $16,859.57. Voyle L. Smith, called as a witness for the defendants, testified that he resided at Yuma, Arizona, and had been actively engaged in the real estate business there since 1913; that he had known the Haidopoulos property for some eighteen years, and that its reasonable market value during the month of March, 1932, and at all times thereafter, was $2,000.

On the vital question of comparative value and the court's finding thereon, appellants, after calling attention to the fact that the parties were dealing with each other at arm's length and that Woollett had expressed a desire to go to Arizona for his health, have this to say: "The appellants had no testimony in rebuttal of that given by W. H. Fitchmiller, as to

the value of the Santa Monica property, as the pleadings of respondent did not disclose that the question of value would be an issue, unless it might be said that the denial of paragraph X of the amended complaint would be sufficient in itself to create such an issue.'' Appellants entirely overlook the code requirement that the plaintiff in an action for specific performance must prove that the contract he seeks to enforce is just and reasonable as to the defendant, and that the consideration is adequate. He must, as we have already pointed out, make this proof as part of his case in chief. Under the pleadings in the instant case it devolved upon plaintiffs to show the value of both pieces of property. This they failed to do and the proof offered by the defendants on the subject merely created a conflict in the evidence as to the value of the Arizona property. Even though both sides had offered exhaustive but conflicting testimony on the question of value, the result on appeal would be the same. It is rudimentary, of course, that where there is competent evidence to sustain a particular finding, the fact that such evidence was in conflict presents no ground for reversal. (*Cross* v. *Bouck*, 175 Cal. 253 [165 Pac. 702]; *Lanning* v. *Talmage*, 66 Cal. App. 48, 51 [225 Pac. 25].) We must hold that there is competent evidence to sustain the finding which we have set out in full.

With one exception, it does not appear necessary to notice with particularity the various specifications of error presented in appellants' brief, since they are in nowise related to the foregoing discussion. Even if we should determine, as urged by appellants' counsel, that the defects in title were too trivial in character to support a finding that plaintiffs failed to perform their contract within the time specified, or within a reasonable time thereafter, recoupment being the usual method of compensating the other party in such circumstances; or, that defendants, subsequent to the notice of rescission, wrote letters to their caretaker which could be construed as a waiver of the rescission; or, that the court erred in overruling an objection to certain testimony offered by the defendants in support of their allegations of fraud— if all of these various contentions were sustained, appellants' position, so far as this appeal is concerned, would not be improved in the slightest degree. There would still remain

the finding, supported by competent evidence, that the contract sought to be enforced was unfair and unjust to the defendants.

The court allowed defendants, on their counterclaim, the sum of $536.19 to cover rentals collected by Haidopoulos while he was in possession of the bungalow-court, and to reimburse them for delinquent water charges which they had paid on·the Arizona property, together with other out-of-pocket expenses. ██ Appellants make no specific objection to this item, but they do challenge the court's right to award defendants an attorney's fee of $400. The contract provided "that in the event of any breach or a disagreement as to the purport and intent of the several conditions and provisions contained in this agreement, necessitating an adjudication by the courts, the prevailing party shall have a reasonable attorney's fee, which the losing party agrees to pay". Appellants urge that respondents, having repudiated the contract, are in no position to avail themselves of the provision for attorney's fees. We do not think this contention can be sustained. A contract may be breached by nonfulfillment (9 Cor. Jur. 319) and plaintiffs' action for specific performance presupposed such a breach. Defendants prevailed in the resultant action, and we do not think they were estopped from demanding a reasonable attorney's fee merely because they relied on rescission as one of their defenses.

The judgment is affirmed.

Pullen, P. J., and Plummer, J., concurred.