[Civ. No. 717.  Third Appellate District.—December 1, 1910.]

## EDWIN G. PORTER, Appellant, v. EDWARD ANDERSON, JONATHAN B. CARTER, and MARTHA ELIZABETH ANDERSON, Respondents.

SPECIFIC PERFORMANCE—ADEQUACY OF CONSIDERATION — JUSTNESS AND REASONABLENESS OF CONTRACT—CODE RULE—EQUITABLE REMEDY—PLEADING AND PROOF.—The rule set forth in section 3391 of the Civil Code, that specific performance of an obligation cannot be enforced against a party, "if he has not received an adequate consideration for the contract," or "if it is not as to him just and reasonable," is only a legislative affirmation of the rule as to specific performance as it has always been recognized and practiced in courts of equity. A natural concomitant of this rule is that a party seeking the remedy of specific performance must *plead* and *prove* that the obligation is just and reasonable as to the party against whom he asks the specific performance.

ID.—CONTRACT TO EXCHANGE LAND—INSUFFICIENT COMPLAINT—ANSWER—FINDING—JUDGMENT FOR DEFENDANTS NECESSITATED.—Where the action is to enforce an exchange of real property, and the complaint is insufficient to support a decree for the plaintiff, and the case was practically tried upon the pleadings, and the answer charged that plaintiff grossly misrepresented the condition and value of his property, when the agreement was made, a finding based upon the insufficiency of the complaint and the averment of the answer that the agreement sought to be enforced is not fair, just and reasonable as to the defendants, and that the consideration moving to the defendant contracting for the exchange was not adequate, is supported and necessitates a judgment for the defendants.

ID.—CHARGE OF FRAUD—RESCISSION OF DEED AND MORTGAGE — AID TO SPECIFIC PERFORMANCE.—The fact that the complaint charges fraud of the defendant contracting to exchange lands, in conveying the property contracted for to his wife, made defendant, and in mortgaging the same to another defendant, and seeking a rescission thereof for such fraud, cannot have the effect to change the character of the action or the ultimate purpose for which it was instituted, where such relief was sought as an aid to the specific performance of the contract between plaintiff and such defendant.

ID.—ANSWER AS TO FRAUD OF PLAINTIFF—BURDEN UPON PLAINTIFF NOT AFFECTED.—The mere allegations of the answer as to the fraud of the plaintiff in misrepresenting the condition and value of his land cannot affect the burden resting upon the plaintiff to show the adequacy of the consideration and the fairness of the agreement alleged by him, as a condition of obtaining the relief prayed for. The

charge made in the answer only emphasizes the rule that plaintiff can have no standing in a court of equity unless he can and does show in the beginning that he is not relying upon a transaction which is fraudulent or unconscientious.

ID.—PLEADINGS TREATED AS EVIDENCE — SUPPORT OF JUDGMENT FOR DEFENDANTS — TENDER BY PLAINTIFF IMMATERIAL.—Where from the averments of the pleadings, treated as evidence, the court was justified in finding against the fairness and reasonableness and adequacy of consideration of the contract, and the judgment for the defendants is sufficiently supported, it becomes immaterial to inquire whether the plaintiff did or did not tender a deed of his property to the defendant or of the cash balance to be paid by him for effecting an exchange of lands under the contract.

ID.—AMENDMENT OF COMPLAINT—OVERRULING DEMURRER—DOUBT OF CORRECT RULING—PROMPT DUTY OF COUNSEL BEFORE TRIAL.—Where the court erroneously overruled demurrers to the complaint, and after its ruling expressed doubts of its correctness, in view of the argument for the defense, and such doubt was entertained by counsel for plaintiff, it was their duty to ascertain the law and promptly to ask leave to amend the complaint to obviate the objection before the trial upon the merits, and not to wait until after trial and adverse opinion by another judge trying the case.

ID.—ERRONEOUS VIEW OF SUFFICIENCY OF COMPLAINT — DISCOVERY OF CORRECT RULING NOT A "SURPRISE" UNDER CODE.—The holding of an erroneous view of the sufficiency of the complaint, and the discovery of a correct view may cause a disappointment, but cannot constitute a "surprise" as a ground for an amendment to the complaint within section 473 of the Code of Civil Procedure.

ID.—NATURE OF "SURPRISE" AS A GROUND FOR RELIEF UNDER CODE—UNEXPECTED SITUATION WITHOUT NEGLIGENCE.—The "surprise" from the effect of which the courts have power to grant relief under the code, either by an amendment to a pleading under section 473 of the Code of Civil Procedure, or upon motion for a new trial under section 657 of that code, must be "some condition or situation in which a party to a cause is unexpectedly placed to his injury, without any default or negligence of his own which ordinary prudence could not have guarded against."

ID.—AMENDMENT AFTER TRIAL — TRIAL DE NOVO NOT ALLOWABLE.— Whatever liberality should be shown in allowing amendments to the complaint under other circumstances, no amendment should be allowed after trial which would necessitate a trial *de novo*.

APPEAL from a judgment of the Superior Court of Butte County, and from an order denying a motion to amend the complaint after trial.   Eugene P. McDaniel, Judge presiding.

The facts are stated in the opinion of the court.

J. R. King, and Devlin & Devlin, for Appellant.

W. E. Duncan, Jr., for Respondents.

HART, J.—On the fifth day of June, 1908, Porter and the respondent, Edward Anderson, became parties to a written agreement by the terms of which they mutually covenanted to exchange certain real and personal property. The real property of Anderson which was the subject of said agreement consists of lots 1 and 2, in what is known as "Gridley Colony No. 5," in Butte county, this state, together with improvements and certain personal property, and that of Porter is situated in the state of Utah, and is described as the "S. W. ¼ of the N. W. ¼ of section 3, township 11 N., 3 West, Salt Lake Meridian, Box Elder County, Utah," together with improvements. On the latter property, so the agreement asserts, there subsisted a mortgage to secure the payment of a note for $1,250, which obligation Anderson agreed, in consideration of the covenants contained in said agreement, to assume. Porter also agreed, as a part of the consideration of the contract to exchange said properties, to pay Anderson the sum of $550 in cash.

It appears from the averments of the complaint that, on the thirty-first day of July, 1908, and while the agreement referred to still subsisted and its terms remained unexecuted, Anderson sold the lots mentioned therein to the defendant, Jonathan B. Carter, for the sum of $4,000, of which $1,200 was paid in cash, and time given on the balance, $2,800, the same being evidenced by a promissory note, secured by mortgage on said lots, executed by said Carter in favor of the defendant, Martha Elizabeth Anderson, the wife of the said defendant, Edward Anderson.

The purpose of this suit by Porter was to secure a decree: 1. To "rescind, cancel and set aside the deed made by the defendant, Edward Anderson, to Jonathan B. Carter"; 2. To "rescind, cancel and set aside the mortgage made by the defendant, Carter, to the defendant, Martha Elizabeth Anderson"; 3. To "enforce a specific performance of the contract between plaintiff and defendant, Edward Anderson."

The defendants each demurred to the complaint on general grounds and said demurrers were overruled by the court, Hon. John C. Gray, judge thereof, presiding.

Thereupon answers were filed by the defendants, and later the cause was called for trial before the Hon. Eugene P. Mc-Daniel, judge of the superior court in and for the county of Yuba, he having been requested by the judge of said first-mentioned court to try the same.

Findings were filed and judgment entered in favor of the defendants and against plaintiff, on the second day of December, 1909.

Before the last-named date, however—on the eleventh day of September, 1909—the judge filed a written opinion in which he declared that the case "was virtually tried upon the pleadings"; that "there was some slight evidence as to certain formal matters, such as the signing of the deed adduced upon the trial." There is, therefore, no bill of exceptions on the merits. The trial court found that the agreement "set out in plaintiff's complaint is not fair, just or reasonable, as to any of the defendants, and that the consideration for the exchange of said property, moving from the plaintiff to defendant, Edward Anderson, was not adequate."

This finding was no doubt based upon the failure of the complaint to allege that the bargain pleaded was fair, just and reasonable as to the defendants, or, more particularly, the defendant, Edward Anderson, and certain averments of the answer (which we shall presently have occasion to consider) charging that the plaintiff grossly misrepresented the condition and value of his property at the time the agreement was made, the facts pleaded in the complaint and answer, respectively, being all the evidence offered and received on the merits.

After the court filed its opinion, and before the findings were filed and the judgment entered, plaintiff, through his attorneys, having previously given notice thereof and served the same, presented and urged a motion that the court "arrest further proceeding in said action, refuse to sign, make or cause to be entered any findings or judgment therein; that said cause be reopened, plaintiff to be permitted to file an amended complaint therein, a copy of which is served herewith, and that thereafter said action be again tried upon such amended complaint and such pleadings as defendant may file thereto and the trial thereof be tried *de novo* upon the merits thereof." The notice of this motion stated that

"said motion will be made and based upon all the records, papers and pleadings on file in said court in said action, together with an affidavit of J. R. King, one of the attorneys for plaintiff, which affidavit is served herewith."

The affidavit of King sets forth an elaborate statement of the history of the cause, disclosing all the proceedings had therein up to the time of the filing of the opinion by the trial judge, and declaring that "any judgment or findings which may be made in said action in accordance with said opinion will work upon this plaintiff a serious injury, all brought about and caused by *surprise* on the part of this plaintiff and his attorneys, a surprise which no ordinary or any reasonable prudence or care could have obviated or avoided."

Counsel for defendants filed a counter-affidavit, and upon these affidavits and the pleadings, papers, etc., constituting the record of the case, said motion was heard and denied by the court.

The appeal here is by the plaintiff from the judgment entered upon the merits of the case and from the order denying his said motion for permission to amend his complaint.

The appeal from the judgment is, as has been seen, upon the judgment-roll alone. The transcript contains a bill of exceptions in the proceedings upon the motion for leave to amend the complaint, etc.

The application for permission to amend the complaint was, as seen, based upon the ground that appellant was taken by surprise by the declaration in the court's written opinion that the complaint failed to state a cause of action, and the proceedings on said application were manifestly initiated in pursuance of the terms of section 473 of the Code of Civil Procedure, by which it is provided, *inter alia*, that a trial court may, "upon such terms as may be just, relieve a party or his legal representative from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect."

1. Section 3391 of the Civil Code provides that "specific performance of an obligation cannot be enforced against a party in any of the following cases: 1. If he has not received an adequate consideration for the contract; 2. If it is not, as to him, just and reasonable. . . ."

The code rule, as it is thus given, is only a legislative re-affirmation of the rule as to the remedy of specific performance as it has always been recognized and practiced in courts of equity. Unless the contract is perfectly fair, equal and just in its terms and in its circumstances, a court of equity will incontinently refuse to specifically enforce it. (See Pomeroy's Equity, 2d ed., sec. 1405.) And a natural concomitant of this unassailable and well-understood proposition is the rule that a party seeking to invoke this equitable remedy must *plead as well as prove* that the obligation is just and reasonable as to the party against whom he asks its specific enforcement. (*Agard* v. *Valencia,* 39 Cal. 292; *Bruck* v. *Tucker,* 42 Cal. 346; *Nicholson* v. *Tarpey,* 70 Cal. 609, [12 Pac. 778]; *Morrill* v. *Everson,* 77 Cal. 114, [19 Pac. 190]; *Windsor* v. *Miner,* 124 Cal. 492, [57 Pac. 386]; *Prince* v. *Lamb,* 128 Cal. 120, [60 Pac. 689]; *Stiles* v. *Cain,* 134 Cal. 171, [66 Pac. 231]; *Flood* v. *Templeton,* 148 Cal. 374, [83 Pac. 148]; *White* v. *Sage,* 149 Cal. 613, [87 Pac. 193]; *Herzog* v. *Atchison etc. R. R.,* 153 Cal. 496, [95 Pac. 898, 17 L. R. A., N. S., 428]; *Martin* v. *Condrey,* 13 Cal. App. 618, [110 Pac. 457].)

The complaint in the case at bar is devoid of any such averment. From its averments it cannot be told whether the contract whose covenants it is sought here to specifically enforce is just, reasonable and fair to the defendant, Anderson —that is, whether there is an adequate consideration moving from plaintiff to Anderson—and for that reason it signally fails to state a cause of action for specific performance. It is altogether incapable of supporting a decree for the relief sought, and the court below could have legally adopted no other course than to find or enter a judgment against the plaintiff.

But counsel for appellant contend that the real issues made by the pleadings "were those of fraud rather than those of specific performance, strictly speaking." It is quite true that the complaint charges fraud in the sale to Carter of the property that Anderson agreed to exchange to the plaintiff and in the execution of the mortgage on said property in favor of Mrs. Anderson. And it is also true that the answers charge that plaintiff misrepresented the condition and the value of and the extent to which he had encumbered the Utah

14 Cal. App.—46

property which he agreed to exchange to Anderson. But the allegations of the complaint as to fraud are only in aid of the ultimate relief sought by the plaintiff—that of specific performance of the agreement on the part of Anderson—and clearly in no degree can they have the effect of changing the character of the action or the ultimate purpose for which it was instituted. With regard to the averments of the answers charging fraudulent representations against the plaintiff as to the character, condition and value of his land, it may first be remarked that, in the absence of an averment in the complaint of the fairness, justness and reasonableness of the obligation as to Edward Anderson, there was, perhaps, no necessity for the defendant to anticipate an issue that the complaint had failed to tender and himself allege facts from which the conclusion must inevitably follow that the bargain was not fair or conscientious. It may parenthetically be suggested that if, under the allegations of fraud in the answer, the plaintiff had been permitted to show without objection the adequacy of the consideration by proof addressed to that point, and in response to said allegations in the answer, on an appeal from the judgment in favor of plaintiff it might properly be held that the defect in the complaint had thus been cured. But, confessedly, no evidence upon any of the issues was received, except the facts stated in the pleadings, the plaintiff making the remarkable contention that the contract, which was made a part of the complaint, shows, upon its face, that it is fair and just and that the consideration is adequate, and that it, therefore, at one and the same time, served as well the purpose of the complaint as that of the proof in that regard. This proposition is without the slightest semblance of merit. How a court or a jury could tell, from a mere inspection of a writing, in which certain property was merely described by metes and bounds, or otherwise, what the real value of such property is, is far beyond us to say. Of course, it cannot be done, and the contract here, if alone, by its mere terms, relied upon as disclosing its fairness to defendant or as proof of that fact, completely fails to accomplish its purpose.

But if the allegations of the answer as to fraud may be held, as is the contention, to inferentially or otherwise tender the issue of the adequacy of the consideration or fairness of

the agreement, it would still rest on plaintiff to prove the fact before a court of equity would grant him the relief prayed for. The mere charge by defendant of fraud against plaintiff in the transaction cannot shift the burden upon defendant to show that plaintiff, having appealed for affirmative equitable aid, is prepared to do equity. This is one of the prerequisites thrown upon him who appeals affirmatively for the extraordinary favor of a court of equity. The charge made against plaintiff in the answer that he was guilty of fraud in the making of the contract only emphasizes the reason underlying the rule that in cases of this character he can have no standing whatsoever in a court of equity unless he can and does make a showing in the very beginning that he is not relying upon a transaction which is the outgrowth of fraud or any other unconscientious considerations.

The attack upon the findings is, as must be apparent from what has already been said, without merit. It is, as seen, admitted by counsel for appellant that no evidence, other than the pleadings themselves, which included the agreement as a part of the complaint, was introduced in support of and against the material and important points at issue. The plaintiff, therefore, made no proof of the fairness of the agreement. The answer, as we have seen, alleged that the property of plaintiff was of a less value than he represented it to be when he entered into the agreement with Edward Anderson. From the averments of the pleadings, then, treated as the evidence and the only proof received for and against one of the vital points in the case, the court was justified in finding that "said agreement set out in the complaint is not fair, just or reasonable, as to any of the defendants, and that the consideration for the exchange of said property, moving from the plaintiff to defendant, Edward Anderson, was not adequate." While perhaps the court would have been justified in rendering and entering judgment against plaintiff on the insufficiency of the complaint alone, without making findings, we perceive no harm in its having done so, since, as stated, the pleadings themselves were in substantial effect submitted as the evidence offered and received in support of their respective averments. In any event, the finding, if findings were necessary, that the agreement "is not fair, just or reasonable as to the defendants," etc., is of itself sufficient

to support the judgment disallowing the relief prayed for, and it, therefore, becomes quite unimportant whether the plaintiff did or did not tender to defendant a deed to the Utah property, or whether he did or did not tender to said defendant the sum of $550, the amount stated in the agreement that he would pay defendant as a part of the consideration for the exchange. The allegation and proof of such tenders, it is plainly apparent, could be of no material importance in the absence of an averment and proof of the fairness and reasonableness of the agreement as to the defendants.

2. Did the court abuse its discretion in refusing to allow plaintiff to amend his complaint after the trial but before the findings were filed and the judgment was entered?

The proceedings upon this motion were, as seen, based upon the pleadings, papers, minutes and orders constituting the record of the case, together with the affidavits filed by the respective parties in support of and against the application for leave to so amend.

The proposed amendment was designed to meet the objection to the complaint urged by the trial judge in his written opinion that said pleading failed to state a cause of action because of the omission of an averment therein that the pleaded agreement was, as to the defendants, fair, just and reasonable.

We have already seen that J. R. King, leading counsel for plaintiff, filed an affidavit in support of the motion for leave to amend the complaint. In this affidavit, besides the statement therein to which we have already referred, he declares, among other allegations, that he relied upon the ruling of Judge Gray on the demurrer as involving a correct conception and view of the law as to the essentials of a complaint in such an action and that he "fully believed, as did all of his (plaintiff's) attorneys, that said complaint was sufficient, and therefore contented himself with proving its allegations and that now to enter up a judgment against him (plaintiff) upon the merits of this case is taking him at a disadvantage and by surprise that no care or prudence on the part of himself or any of his attorneys could have foreseen or avoided," etc.

The affidavit of the attorney for defendants declares that, when the demurrers of the several defendants were argued

before Judge Gray, the question whether said complaint was deficient or wholly wanting in the statement of a cause of action for specific performance of said agreement in that it contained nothing by way of averment disclosing the fairness and reasonableness of the contract as to defendants was fully and exhaustively argued; that affiant pointed out wherein the complaint was fatally defective, but that the court and the said judge thereof declined to accept his view of the law and so overruled the demurrers; that thereafter, and before the cause was called for trial, some of the attorneys connected as such with the plaintiff's case, had admitted and declared that the order overruling the demurrers was erroneous and that in their opinion the complaint did not state a cause of action for the reasons urged by the attorney for the defendants in his argument on the demurrers; that one of the attorneys for plaintiff, after the order overruling the demurrer was made, urged upon J. R. King, leading counsel for plaintiff, the necessity of filing an amended complaint; that said J. R. King, even after the decision by the court overruling the demurrers, expressed to "various and divers persons" doubt and uncertainty as to the sufficiency of the complaint, and that he "seriously contemplated and considered the propriety of filing an amended complaint herein." It is further alleged that, on the day on which the order overruling the demurrers was made, Judge Gray, during the course of a colloquy between himself and counsel for defendant, after the order was made, himself expressed some doubt as to the correctness of his ruling, though allowing it to stand. Many more like allegations are contained in the affidavit of the attorney for defendant, and we doubt not that they were sufficient to relieve the judge hearing the motion, in the exercise of the discretion vested in the court in the disposition thereof, of the embarrassment of deciding said motion against the plaintiff under an apprehension that his leading counsel was, particularly after the argument on the demurrers, wholly ignorant of the essentials of a complaint in an action for specific performance, or at least, that said attorney was at all times, after the demurrers were argued, of the unqualified opinion that his complaint was sufficient for the relief sought. In other words, we think the court was justified in finding from the affidavit of counsel for defendant that the leading counsel for plaintiff was him-

self at least in grave doubt, from the time that the demurrers were overruled, whether his complaint stated a cause of action, and that, entertaining such doubt, it was his duty to confirm or remove it by further investigation of the question before the cause was called for trial on the merits.

But in any event, the "surprise" by which counsel for appellant was taken, as explained in his affidavit and upon which he planted his demand that his motion be granted, is very clearly not the "surprise" referred to and contemplated by section 473 of the Code of Civil Procedure. He merely had an erroneous view of the requisites of a sufficient complaint in this kind of action, and the last ruling of the court upon that question was a disappointment rather than the "surprise" contemplated by said section. (*Fuller* v. *Hutchings*, 10 Cal. 526, [70 Am. Dec. 746] ; *Klockenbaum* v. *Pierson*, 22 Cal. 160; *Santa Cruz R. P. Co.* v. *Bowie*, 104 Cal. 286, [37 Pac. 934] ; *Dewey* v. *Frank Bros. & Co.*, 62 Cal. 343.) Lawyers are constantly receiving the "surprises" that counsel complain of here. As well could it be maintained that every ruling of the court upon a question of evidence during the progress of a trial, contrary to counsel's notion of the law of evidence, and which admitted testimony that they had not prepared themselves to meet or overcome, would constitute the "surprise" which, under section 657 of the Code of Civil Procedure, may be made the basis of a motion for a new trial. While the ruling itself could, of course, be made the ground of the motion, the "surprise" of counsel at such ruling could, obviously, not be.

The "surprise" from the effect of which it is within the power of the courts, under our code sections, upon a satisfactory showing, to relieve a party, is defined to be "some condition or situation in which a party to a cause is unexpectedly placed, to his injury, *without any default or negligence of his own* (see Bouvier's Law Dictionary; Anderson's Law Dictionary; *McGuire* v. *Drew*, 83 Cal. 229, [23 Pac. 312], and *Brandt* v. *Krogh*, 14 Cal. App. 39, [111 Pac. 275, 284]), which ordinary prudence could not have guarded against," and in our opinion it would be the very limit of unreasonableness to hold that where a party, under the advice of his attorney, has acted upon an erroneous conception of the law, and suffers the injury which would be the natural and inevitable result thereof, he may be relieved of his un-

toward situation on the ground that he was taken by "surprise" by reason of the fatal error into which he had thus been led.

We are not unmindful of the many cases holding that, in the furtherance of justice, the rule with regard to the amendment of pleadings should be liberally construed. As is said by Judge Chipman, as commissioner, in *Lee* v. *Murphy,* 119 Cal. 367, [51 Pac. 550, 955], while "it is unusual to find it necessary to amend the complaint after a case has been submitted, yet I find no limitation as to the time before judgment entered when the power of the court ceases, and even after judgment it may be exercised for the relief of a party where the judgment results from mistake, inadvertence, surprise, or excusable neglect." It has always been held to be the proper course to allow amendments, even after the trial but before judgment is entered, if necessary to do so to make the averments of a pleading conform to the proof. But we have never heard of a case where, after the trial has been had, an amendment necessitating a trial *de novo* has been allowed. And such would be the result of the allowance of the proposed amendment to the complaint in the case at bar. In fact, the motion not only asks for leave to amend but also that the cause be reopened for retrial. And herein lies the distinction between those cases, cited by appellant, wherein amendments have been allowed after the submission of the case but prior to the entry of judgment and the case here.

The conclusion at which we have arrived may appear to be a hardship on the plaintiff, yet it would result in the establishment of a very dangerous precedent to hold that litigants may be relieved of the effect of the mistakes of lawyers in the application of legal principles on the ground of "inadvertence, surprise or excusable neglect," or that such mistakes are those from which the statutes intend or contemplate that a party may be relieved.

There was no abuse of discretion in the refusal to grant plaintiff's motion, and the judgment and order appealed from are, therefore, affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 30, 1911.