[Civ. No. 12276. First Dist., Div. One. Nov. 1, 1943.]

MAE BAKER et al., Respondents, v. WILLIAM BERRE-MAN et al., Appellants.

236

Cooley, Crowley & Supple and Robert L. Lamb for Appellants.

Felix Lauricella, George I. Hoffman and T. B. Scott for Respondents.

KNIGHT, J.—The defendants appeal from an order granting a new trial in an action for damages brought by the parents of John Ventura, who was killed in a collision between an automobile he was driving and one driven by the defendant Berreman. The appeal is now before this court on rehearing, which was granted in order to give consideration to numerous cases not cited in the original briefs, mostly from outside jurisdictions, which involved issues similar to the one here presented.

The accident occurred about 2:30 o'clock on the morning of December 21, 1940, at the intersection of Fremont and Mission Streets in San Francisco, and the trial took place before a jury early in January, 1942. A verdict was returned in favor of defendants on January 8, 1942, and the motion for new trial was granted on March 9, 1942, by a judge other than the one who presided at the trial, the latter having died subsequent to the entry of judgment and prior to the presentation of the motion for a new trial. The motion was granted by the entry of a minute order in general terms, insufficiency of the evidence not being specified as one of the grounds therefor; and the question presented by the appeal is whether the trial court was legally justified in granting the motion upon the ground of accident or surprise, which ordinary prudence could not have guarded against (subd. 3, sec. 657, Code Civ. Proc.) Such was one of the several grounds specified in plaintiffs' motion, in support of which they filed two affidavits showing that an eye witness to the accident named Burness, subsequent to the happening of the accident, was inducted into the army; that while stationed in a training camp in San Luis Obispo County he promised to attend the trial and testify as a witness for plaintiffs, but afterwards, on account of unavoidable and unforeseen events brought about by the outbreak of war, was unable to do so. Two days prior to the trial, he so notified counsel for plaintiffs, but no request was made for continuance. One of the supporting affidavits was made by counsel for plaintiffs, and the other by Burness.

As pointed out in California Jurisprudence (vol. 20, p. 69), the general rule is that the absence of a witness does not warrant the granting of a new trial on the ground of

surprise, since the parties are bound to use reasonable diligence in endeavoring to procure the attendance of witnesses, and, in case of their nonappearance, to move for a continuance. Here the record shows that Burness had never been subpoenaed as a witness, nor had any attempt ever been made to take his deposition, although up to two days prior to the trial plaintiffs were given ample opportunity so to do; furthermore, the record shows, as stated, that two days prior to the date set for the commencement of the trial Burness notified counsel for plaintiff by telegram that he would not be able to attend, and despite such knowledge plaintiffs made no request for a postponement nor at any time during the course of the trial did they even intimate to the court or opposing counsel that they had suffered any accident or surprise because of the absence of any witness. Defendants contend, therefore, that not only was there a lack of diligence to procure the testimony of the witness, but that by reason of the total failure during the course of the trial to mention the matter of his absence or to request any postponement, the ground of accident or surprise was not available to plaintiffs afterwards as a ground for new trial; that in those circumstances the law will not permit them to proceed with the trial, speculate on the outcome, and then later, on motion for new trial, complain of the absence of a witness.

The particular facts relating to the absence of the witness, as they appear from counsel's affidavit, are as follows: The trial was originally set for October 22, 1941, and subpoenas were issued for plaintiffs' witnesses, including Burness. He was a resident of San Francisco, and prior to the issuance of the subpoena he had been interviewed by plaintiffs' counsel relating to the circumstances attending the accident. The subpoenas were given to a process server on October 10, 1941, but a week later he reported to plaintiffs' counsel that he was unable to serve Burness because he had been inducted into the army. Shortly afterwards, however, counsel learned through Burness' mother that he was stationed at Camp Roberts in San Luis Obispo County, and he sent Burness a telegram asking him to be present at the trial. Burness replied that he had arranged with his commanding officer so to do. Due, however, to congestion of the superior court calendar the court dislodged the case from the calendar and counsel for plaintiffs so advised Burness by letter, stating that when the trial date was definitely settled he would be notified.

Thereafter on stipulation the trial date was set for November 13, and counsel for plaintiff so notified Burness, but on November 10 the court again dislodged the case from the trial calendar and counsel for plaintiffs again so notified Burness. Meanwhile Burness came to San Francisco to visit his mother. He was then a lieutenant, and while in San Francisco he informed plaintiffs' counsel that it would be a simple matter for him to obtain leave to attend the trial when the date was finally settled. Later counsel sent him a subpoena so that the army record would show the reason for his absence if he attended the trial. Shortly thereafter war was declared, and on December 30, 1941, counsel for plaintiffs notified Burness by telegram at Camp Roberts that the trial date had not been set, and suggesting that when it was necessary for him to attend he should come by plane. The next day, December 31, 1941, counsel for plaintiffs was notified by the secretary of the superior court that the cause would be tried on Monday, January 5, 1942, and counsel so notified Burness by telegram, asking him to come by plane; but on January 3, 1942, counsel received a telegram from Burness stating that he would not be present. Thereupon counsel wired back asking when he could appear, and Burness replied by telegram stating that he expected a change of station and that his plans were indefinite. This last telegram from Burness was received by counsel on Monday, January 5, 1942, after the trial had begun, and that same night he tried to reach Burness at Camp Roberts by phone, but was informed by the commanding officer that Burness had been transferred and that his present location was a military secret. Thereafter and during the course of the trial counsel kept in touch with Burness' mother, but she was unable to give him any information as to her son's whereabouts, and the trial ended on January 8, 1942. As stated, however, at no time prior to or during the course of the trial did counsel ever mention the matter of the absent witness or request any postponement of the trial; and less than a month after the trial ended counsel ascertained that Burness was stationed at Riverside, California, and on March 4, 1942, obtained from him the affidavit which was used in the presentation of the motion for new trial.

After having examined the additional authorities submitted, and given full consideration to all of the circumstances of the case, we are of the opinion that the trial court's order is not sustainable. As will be seen by the facts disclosed

by counsel's affidavit, plaintiffs knew for two and a half months prior to and up to within two days of the trial that the witness was in the army and was stationed at Camp Roberts. They knew also of the importance of his testimony, because they had already interviewed the witness; and during all of that period of time they were afforded full opportunity to take his deposition, but no steps were taken to that end; in fact in November, 1941, which it will be noted was more than a month before the cause was brought to trial, the witness was in San Francisco, and at that time communicated with counsel for plaintiffs. Moreover it appears that for nearly a month after the outbreak of the war Burness continued to remain at Camp Roberts, and that plaintiffs knew that he was still stationed there. It would seem, therefore, that in view of the extremely uncertain and unsettled conditions prevailing during the month of December, 1941, there was a lack of diligence on the part of plaintiffs in failing to procure the deposition. True, the witness promised he would attend the trial, and he doubtless would have done so had he not been prevented by events over which he had no control. But plaintiffs must have realized, especially after the declaration of war, that large bodies of American troops were being suddenly and rapidly transferred from one military station to another, and that under such conditions there would be no reasonable assurance that Burness would remain at Camp Roberts much longer or be available at all as a witness when the case was finally set for trial. In other words it appears that for nearly a month after the actual outbreak of hostilities plaintiffs could have taken the deposition of the witness; and that being so, it would seem that there could be no legal excuse under the circumstances for not having done so. Under well settled legal rules, in order to justify the granting of a motion for new trial upon the ground of accident or surprise due to the absence of a witness or newly discovered evidence, the affidavits or other evidence introduced in support of the motion must show that there has been no lack of diligence to procure the testimony of the witness. (*Turner* v. *Morrison,* 11 Cal. 21; *Heath* v. *Scott,* 65 Cal. 548 [4 P. 557]; *Denvir* v. *Judson Fruit Forwarding Co.,* 86 Cal.App. 369 [260 P. 846]; *Bradbury Estate Co.* v. *Carroll,* 98 Cal.App. 145 [276 P. 394]; see, also, *Slemons* v. *Paterson,* 14 Cal.2d 612 [96 P.2d 125].) It is our opinion that in the present case such showing was not made.

██ Irrespective, however, of the question of whether there was a lack of diligence in failing to procure the deposition of the witness, it is our conclusion that since plaintiffs knew definitely, two days before the date set for the trial, that the witness would not be able to attend, and that nevertheless they proceeded with the trial, in his absence, without even having brought the matter to the attention of the court or opposing counsel, or ever having requested a reasonable postponement, the grounds of accident and surprise were not afterwards available to them in asking for a new trial.

. ██ The general rule governing in cases of this kind is as stated in 39 Am.Jur. at page 158, that the "right to a new trial on the ground of surprise is waived if, when the surprise is discovered, it is not made known to the court, and no motion is made for a mistrial or continuance of the cause"; and as will be seen from the supplemental briefs filed herein by the respective parties, cases involving the application of the foregoing general rule are to be found in nearly all jurisdictions; and beyond question such general rule has been recognized by the courts of this state for a great many years. An examination of the additional authorities cited by the parties shows that some of them involved absent witnesses, while others dealt with cases of surprise brought about during the course of the trial by the failure of a witness to testify as promised or by unusual situations arising from the introduction of unforeseen events by the adverse party or his omission to produce vital documents at the trial. Each case involved its own peculiar facts, and it would doubtless be an interminable task and serve no useful purpose here to analyze them. No attempt will be made to do so, but it may be stated generally that in all of the cases so cited clear recognition was given to the existence of the universal rule hereinabove quoted. In some instances the rule was applied and in others it was not; and in some cases the trial court's ruling was reversed, and in others it was affirmed, depending on the factual situation presented by the individual case.

One of the earliest cases arising in this state involving the application of the rule is *Turner* v. *Morrison, supra.* There a new trial was granted because of the absence of a witness, but on appeal the order was reversed. In so reversing the order the court said: "The order of the court below was clearly erroneous. The facts set out in the affidavits in support of the motion for a new trial should have been made the

foundation of an application for a continuance, so that the plaintiffs might, if they desired, have avoided the delay by admitting the evidence as stated in the affidavit of defendants. 'That a party came to trial unprepared to make out his case, or etsablish his defense, has not even the appearance of a valid excuse. It is true that, sometimes, no amount of diligence or effort will suffice to arrange all the details and procure everything needful in time for the trial. But injury need not for that reason be sustained. Courts are extremely indulgent and liberal in granting adjournments, and they are seldom or never appealed to in vain in a proper case. Even where it is simply expedient that a continuance should be had, and much more where any necessity for it exists, they will not deny a postponement. It is therefore incumbent upon a party, if for any good reason he finds himself unprepared to go on, to state the circumstances to the Court and move for an adjournment. If he fails to do this, he waives his want of preparation, and all right after to object. Any other rule would work great injustice, and be attended with innumerable evils.' (3 Graham & Waterman on New Trials, p. 894.)

" 'The parties,' says Judge Kent, in *Alexander* v. *Bryan*, (2 John. Cas., 318) 'must come to trial prepared, at their peril, and if either party has any good excuse for not being prepared, he is entitled of right to a postponement of the trial. It has, therefore, been repeatedly held, that the subsequent allegation of a party that he was not prepared, is no reason for granting a new trial, unless it be founded on the discovery of testimony of which the party was not at the time apprised.'

"By failing to apply for a postponement of the trial, plaintiffs waived their right to move for a new trial for reasons which existed at the time of the trial."

Another early California case is *Schellhous* v. *Ball*, 29 Cal. 605. In that case the surprise was brought about during the trial by an adverse ruling of the trial court, and no motion for continuance was requested. A new trial was denied, and on appeal the order was affirmed. In part the court said: "Upon this ground [surprise] new trials should be granted with great caution, for in many cases it is used as a pretext and a cover for carelessness and inattention rather than as a meritorious ground for relief. A party claiming to have been injured must show that the surprise has not resulted in any degree from his own fault or negligence, and must in addition claim his relief at the earliest opportunity. If he can relieve

himself from his embarrassment in any mode, either by a non-suit or a continuance, or the introduction of other testimony or otherwise, he must not take the chances of a verdict, but must at once fortify his position by resorting to all available modes of present relief. . . . When during the progress of a trial conditions are found to exist which may amount to legal surprise, it is better for the purposes of justice and the convenience of courts and litigants to afford relief at once and on the spot, if it can be done; and in the exercise of that sound discretion which the law recognizes as vested in Judges they should not refuse such relief, if attainable under the circumstances, and it is not to be presumed that they will. This discretion however should be exercised with great care and only in cases where the Court is satisfied that the surprise has not resulted from carelessness, for its exercise in such a case would be demoralizing and tend to a relaxation of that vigilance on the part of counsel which the due and orderly conduct of a trial renders indispensable. What we mean to say is that the relief should be granted on motion at the trial, if practicable, when it would be granted on motion after the trial, and not otherwise.''

The above two cases have been cited repeatedly with approval in later cases, among them being *Heath* v. *Scott, supra; Denvir* v. *Judson Fruit Forwarding Co., supra; Bradbury Estate Co.* v. *Carroll, supra; Whitfield* v. *Debrincat,* 18 Cal. App.2d 730 [64 P.2d 960] ; and so far as our attention has been called, there has been no repudiation of such general rule.

In the present case, assuming, as plaintiffs contend, that there was no lack of diligence in failing to procure the deposition of the witness during the two and a half months preceding the trial, plaintiffs would have been entitled to and doubtless would have been granted a reasonable continuance in order to locate the witness, if a request for such continuance had been made. In this connection the record shows that had the cause been brought to trial on any of the previous dates set, the witness would have been able to attend, but it was twice dislodged by the court of its own motion, and finally summarily set for trial on only five days' notice; and on the date set, because of conditions beyond the control of the witness or plaintiffs, the witness was unable to attend. It would seem apparent, therefore, that to have denied a reasonable continuance in those circumstances, if request had been made

therefor at the opening of the trial, would have constituted an abuse of discretion. On the other hand, if at the opening of the trial plaintiffs had made known to the court and opposing counsel the circumstances relating to the unexpected absence of the witness, it is not unreasonable to believe that the trial court would have been able to have brought about a stipulation between the parties as to the testimony plaintiffs expected to elicit from the witness, and then go on with the trial. In any event, if defendants had declined to enter into such a stipulation and request for a continuance were denied, defendants would not have been in a favorable position afterwards to claim in opposition to a motion for new trial that plaintiffs had been derelict in failing to exercise all available means to obtain a reasonable postponement.

As plaintiffs point out, the general rule hereinabove quoted requiring the presentation of a motion for continuance when the surprise is discovered is not inflexible but is to be given a reasonable application; and in support of their contention that the present situation falls within one of the excepted classes, they argue that they were not in a position to move for a continuance for the reason that they did not then know the whereabouts of the witness and consequently could give the court no assurance as to when if ever they would be able to produce him as such or take his deposition. As already shown, however, the admitted circumstances of the case were such as would have called for a reasonable continuance, and there is nothing in the record to indicate that if application had been made therefor it would not have been granted; furthermore it appears that if such continuance had been applied for and granted the result would not have been futile, since within a month after the trial ended the witness was definitely located in Riverside, California.

In further support of their contention that they were not required to move for a continuance plaintiffs cite several cases, but in our opinion they are not here controlling. In *Laverne v. Dold*, 17 Cal.App.2d 180 [61 P.2d 497], the order granting the new trial specified as one of the grounds therefor insufficiency of the evidence, and such was the main ground upon which the order was affirmed. True, it was held also that there was legal justification for granting the new trial on the additional ground of newly discovered evidence, and that under the circumstances there present the failure to move for a continuance did not alter the situation. But in this respect it is

pointed out that one of the reasons why such a motion would not have been available was that the respondent was unable to make an affidavit "as to what he [the witness] would testify if called." Such is not the case here. In *Whitfield* v. *Debrincat, supra,* the factual situation was essentially different from the one here involved. There the surprise occurred during the course of the trial as the result of a witness having testified on a vital point exactly contrary to what he had told respondent was the fact prior to the trial. And in affirming the order granting the new trial the court held in effect that in those circumstances to have moved for a continuance or to attempt an impeachment might only have made matters worse, and that such testimony coming from one of the respondent's own witnesses under such circumstances could and probably would have undermined whatever reliance the jury may have had in his defense. No such situation existed here. In *Delmas* v. *Martin,* 39 Cal. 555, the surprise occurred at the very close of the case by the unexpected introduction in evidence by the adverse party of a deed, and it was held in effect "that in the last stage of a jury trial, at the conclusion of the evidence, sufficient opportunity may not have occurred to have enabled the defendants and their counsel to decide, deliberately and discreetly, what course it was proper to pursue in respect to the last item of proof which was offered in the cause"; and that therefore the failure to request a continuance did not operate as a waiver of the right to move for a new trial on the ground of surprise. *Rodriguez* v. *Comstock,* 24 Cal. 85, was another case of a witness having testified contrary to what he had previously told the parties producing him, and the parties had no other witness in attendance by whom they could establish the fact they expected to prove by the witness who had failed them; whereas after the trial had ended such a witness was discovered. The court held that under the circumstances the failure to move for a continuance at the time of trial was not fatal, "for at that time they did not know, and therefore could have given no assurances to the Court, that a continuance would enable them to retrieve the disaster that had befallen them." The last case cited by plaintiffs, *Barr* v. *Mountjoy,* 50 Cal.App.2d 40 [122 P.2d 676], is not at all in point. The basis of the decision there, in affirming the order granting the new trial, was that the trial court had committed fatal error in law in failing to bear in mind that the defendant was guilty of negligence *per se* in

failing to yield the right of way to a pedestrian in a crosswalk. The decision does not indicate what the facts were with regard to accident and surprise.

In considering the merits of the appeal we have not overlooked the fundamental rule that the matter of granting or refusing to grant a motion for new trial upon the grounds of accident or surprise or newly discovered evidence is generally a matter within the discretion of the trial court, and and that such an order will not be disturbed unless a clear abuse of discretion is shown. However, as stated in *Slemons* v. *Paterson, supra,* that rule has no application where the evidence upon which the order is made furnishes no reasonable basis for the exercise of such discretion; and it is our opinion that such is the situation in this case.

Besides Burness there was another eye witness to the accident, named Vincent Allemany, who was riding with Ventura at the time of the collision; and Allemany was produced as a witness at the trial and gave a full account of the circumstances attending the accident as he saw it. The facts to which Burness would have testified are set forth in detail in his affidavit; and a comparison thereof with the testimony given by Allemany would seem to show that aside from the fact that Burness witnessed the accident from a different angle, his version of the happening thereof was substantially the same as that given by Allemany. Defendants contend, therefore, that in any event Burness' testimony would have been merely cumulative, and would have presented no different case to the jury, which served as another reason why the motion for new trial should have been denied. (*Brandt* v. *Krogh,* 14 Cal.App. 39 [111 P. 275].) This point becomes unimportant, however, in view of the conclusions reached on the others hereinabove discussed.

The order is reversed.

Ward, J., concurred.

PETERS, P. J.—I concur. I agree with the holding in the majority opinion that plaintiffs' failure to mention, during the trial, their inability to secure Burness as a witness, as a matter of law, under the facts here existing, bars them from relying on accident or surprise as a ground for a new trial. I disagree, however, with the holding that, as a matter of law,

plaintiffs' counsel was guilty of a lack of due diligence in failing to take the deposition of the witness. The majority opinion fully and fairly states the facts. It therein appears that the case was originally set for trial on October 22, 1941. Burness was then available, and had secured the permission of his commanding officer to attend. The case was then put over to November 13th. Burness was then available, and about this time advised plaintiffs' counsel that it would be a simple matter to obtain leave to attend the trial. On December 31st the case was set for January 5th. As late as December 30th plaintiffs' counsel must have believed Burness was available, because on that date he notified him the trial date had not been set, but that when it was, to come to San Francisco by plane. It was not until January 3, 1942, that plaintiffs' counsel was informed that Burness was not available. At that time he was equally unavailable so far as taking his deposition was concerned. The majority opinion holds that, as a matter of law, plaintiffs' counsel was guilty of a lack of due diligence in not taking Burness' deposition, at least after December 7, 1941. In my opinion, under such a state of facts, whether plaintiffs' counsel exercised due diligence in failing to take the deposition, and whether he was reasonably entitled to believe that Burness would be available, were questions of fact for the trial court. It may be conceded that the trial court would have been justified in finding a lack of due diligence, but the point is, that, in support of the order, we must assume it found the other way. While we know now in 1943 that those in the armed forces are frequently and unexpectedly transferred from place to place, we did not have that knowledge in December of 1941. Keeping in mind the wide discretionary powers of the trial court in passing on such motions, it is my opinion that the trial judge was justified in finding that up to January 3, 1942, plaintiffs' counsel was reasonably justified in believing that the witness would be available when needed. For that reason, he was not guilty of a lack of due diligence in failing to take the deposition of the witness.

Respondents' petition for a hearing by the Supreme Court was denied December 27, 1943. Carter, J., and Schauer, J., voted for a hearing.