[Sac. No. 5891. In Bank. Feb. 4, 1948.]

MABEL B. KAUFFMAN et al., Respondents, v. JOSEPH E. DE MUTIIS, Appellant.

Yale S. Kroloff, Charles E. Koller and Jack J. Miller for Appellant.

Russell A. Harris for Respondents.

EDMONDS, J.—The propriety of an order granting a new trial upon the ground that a witness subpoenaed by the plaintiff did not appear for examination is challenged by the defendant, who obtained a verdict in his favor. The question for decision concerns the construction and application of section 657 of the Code of Civil Procedure insofar as it authorizes a new trial because of "accident or surprise."

The action is for damages because of personal injuries received in an automobile collision. Rudolph Erends, a locomotive engineer, witnessed the accident. Eight days before the trial, he was interviewed by Charles E. Koller, one of defendant's counsel. When Erends stated that he had not been subpoenaed by the plaintiffs, Koller served him with a subpoena. But Koller told him that, after further consideration of the evidence, he would notify him as to whether or not he need appear at the trial. Five days later, Erends was subpoenaed by the plaintiffs.

Erends was not present at the trial. According to the affidavits presented on behalf of the plaintiffs, their counsel had planned to use him as a rebuttal witness. After the defendant had rested, counsel found that he was not present, and they reached him by telephone at the railroad roundhouse in another city. At that time, Erends stated "that he had planned to attend the trial . . . in response to subpoenas served upon him, but that he had been notified by telephone that it would not be necessary for him to appear in court; that . . . he was scheduled to leave immediately on a railroad run as locomotive engineer and that it would . . . be impossible for him to . . . appear at the trial. . . ." Erends' statement in regard to his failure to appear is that he "received a telephone call from a person unknown to him and was ad-

vised by said person that it would not be necessary for him to appear in court in response to said subpoenas; . . . .''

In affidavits submitted by counsel for the defendant, it is said that on the day before the trial commenced, Koller, an attorney associated with Kroloff, endeavored to reach Erends by telephone at the railroad roundhouse. Erends was not there, Koller was informed, but a message could be left for him. Koller then identified himself as the attorney who had subpoenaed Erends to appear ''on behalf of the defendant Joseph E. De Mutiis at a trial that was commencing in Auburn [on the following day] . . ., and that it had been decided that . . . Erends would not be needed as a witness for the defendant and that he need not answer to the subpoena given to him by Mr. Koller in behalf of the defendant.''

There is no suggestion that Erends' failure to appear in response to the subpoena served upon him by the plaintiffs was due to anything other than a misunderstanding of the message left by Koller. As stated by Koller in his affidavit, at no time, either directly or indirectly, did he say that Erends should ignore any subpoena other than the one served on behalf of the defendant.

Kroloff declared in his affidavit that after the plaintiffs' attorneys learned that Erends was not present, there was a discussion between counsel. Kroloff then suggested to Harris, it is said, ''that if he was desirous of having the witness testify, that he should request a continuance of the case for that purpose; Mr. Harris immediately retorted that he did not intend to have the case continued for that purpose, but that if anything went wrong he would file affidavits with this court in support of a motion for a new trial. . . .''

When the court reconvened, Harris did not request either a continuance or the issuance of a bench warrant, nor did he advise the court as to what had occurred. He had the bailiff call the witness and, when there was no response, proceeded to present his rebuttal evidence. The next day the case was argued and submitted to the jury, which returned a verdict in favor of De Mutiis. Thereafter, the plaintiffs made a motion for a new trial based upon all of the statutory grounds and supported by affidavits. The motion was granted upon the sole ground of ''accident or surprise which ordinary prudence could not have guarded against and by which

plaintiffs were prevented from having a fair trial.'' (Code Civ. Proc., § 657.)

Upon his appeal from that order, De Mutiis contends that the trial court abused its discretion in granting the motion for a new trial. Under the undisputed facts, he argues, there was no accident or surprise within the meaning of the quoted code section. And to allow a plaintiff a new trial when no continuance or other relief was asked at the time when he knew that a witness was not present gives counsel opportunity to speculate on a favorable verdict. The plaintiffs' reply that abuse of discretion is not shown because they had no opportunity calmly and deliberately to determine the effect of the failure to call Erends as a witness.

■ ''The terms 'accident' and 'surprise,' although not strictly synonymous, have, as used in legal practice, substantially the same meaning, as each is used to denote some condition or situation in which a party to a cause is unexpectedly placed, to his injury, without any default or negligence of his own (see Bouvier's Law Dict.; Anderson's Law Dict.), which ordinary prudence could not have guarded against. (Code Civ. Proc., § 657, subd. 3.)'' (*McGuire* v. *Drew*, 83 Cal. 225, 229 [23 P. 312]; *Jennings* v. *American President Lines*, 61 Cal.App.2d 417, 429 [143 P.2d 349, 144 P.2d 54]; *Porter* v. *Anderson*, 14 Cal.App. 716, 726 [113 P. 345].) However, where a situation arises which might constitute legal surprise, counsel cannot speculate on a favorable verdict. He must act at the earliest possible moment for the ''right to a new trial on the ground of surprise is waived if, when the surprise is discovered, it is not made known to the court, and no motion is made for a mistrial or continuance of the cause.'' (*Bailey* v. *Richardson*, 66 Cal. 416 [5 P. 910]; *Heath* v. *Scott*, 65 Cal. 548 [4 P. 557]; *Dewey* v. *Frank Bros. & Co.*, 62 Cal. 343; *Ferrer* v. *Home Mut. Ins. Co.*, 47 Cal. 416; *Delmas* v. *Martin*, 39 Cal. 555; *Doyle* v. *Sturla*, 38 Cal. 456; *Schellhous* v. *Ball*, 29 Cal. 605; *Turner* v. *Morrison*, 11 Cal. 21; *Baker* v. *Berreman*, 61 Cal.App.2d 235 [142 P.2d 448]; *Bradbury Estate Co.* v. *Carroll*, 98 Cal. App. 145 [276 P. 394]; *Denvir* v. *Judson Frt. Forwarding Co.*, 86 Cal.App. 369 [260 P. 846]; 1 Haynes New Trial, § 76 et seq.; 20 Cal.Jur. 69, 74; 39 Am.Jur. 158.)

Plaintiffs concede that a litigant must take prompt action when he is confronted by the absence of a material witness, but they argue that they were excused from asking for a

continuance because they did not have time for discreet deliberation as to the effect of not calling Erends. As authority for their position they rely upon *Delmas* v. *Martin, supra*. However, in *Ferrer* v. *Home Mut. Ins. Co., supra,* the Delmas case was expressly limited to its facts, and it has no application here. Delmas sued to quiet title, and a deed by one Davidson conveying to him the land in dispute was the last evidence introduced. The defendant claimed surprise because that deed was made some years after a prior conveyance of the same property to him by Davidson. The subsequent deed had not been recorded; Martin had no knowledge of it and was not prepared to meet it. The court held that a new trial should have been granted, stating: "It may well be, that in the last stage of a jury trial, at the conclusion of the evidence, sufficient opportunity may not have occurred to enable the defendants and their counsel to decide, deliberately and discreetly, what course it was proper to pursue in respect to the last item of proof which was offered in the cause. We perceive nothing in the record to justify the belief that the defendants and their counsel were not acting in good faith in omitting to apply for a continuance, and are satisfied that they were guilty of no *laches*. . . ." (*Delmas* v. *Martin, supra,* at p. 558.)

An entirely different situation is shown by the record now being reviewed. Here the plaintiffs and their counsel knew before they commenced the presentation of rebuttal evidence that Erends would be unable to attend. The attorney for De Mutiis suggested a continuance so that Erends could testify. Opposing counsel, in the presence of the plaintiffs, stated "that he did not intend to have the case continued for that purpose, but that if anything went wrong would file affidavits . . . in support of a motion for a new trial." This amounts to an express statement that the plaintiffs intended to speculate upon a favorable verdict. As this court said in an early case: "Not till after the decision did they present the view of surprise; and we think it was then disappointment rather than surprise; . . . ." (*Dewey* v. *Frank Bros. & Co., supra,* at p. 347.)

Although it is well settled that the granting or denial of a motion for a new trial is discretionary with the trial court and its determination will not be disturbed even though this court might be inclined to rule differently if

passing on the motion de novo (*Mazzota* v. *Los Angeles Ry. Corp.*, 25 Cal.2d 165 [153 P.2d 338]; *Koyer* v. *McComber*, 12 Cal.2d 175 [82 P.2d 941]; *Fennessey* v. *Pacific Gas & Elec. Co.*, 10 Cal.2d 538 [76 P.2d 104]; *Whitfield* v. *Debrincat*, 18 Cal.App.2d 730 [64 P.2d 960]), the power is not absolute. As stated by Mr. Justice Carter in *Slemons* v. *Paterson*, 14 Cal.2d 612, 615 [96 P.2d 125]: "This rule has no application where the affidavit or other evidence upon which the order is made furnishes no basis for the exercise of such discretion." To the same effect are *Dewey* v. *Frank Bros. & Co., supra,* and *Baker* v. *Berreman, supra.*

The order granting a new trial is reversed.

Gibson, C. J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

The position of the majority is akin to that of the Sunday morning quarterback who calls the plays by hindsight, and then comments on the poor judgment of the player who was required to make his decisions on the spur of the moment and under the stress of imminent conflict. The cold record cannot reveal the emotional strain to which counsel was subjected at the time he was forced to decide whether to proceed with the trial or ask for a continuance when he learned that the witness he expected to call was absent through no fault on his part. Those familiar with the trial forum have some appreciation of the delicacy of such a situation and realize the importance of allowing the trial judge a broad discretion in relieving a party from the effect of an unwise decision under the circumstances here presented. Such discretion should not be controlled by some mere rule of thumb, dogmatically applied, like a teacher teaching a kindergarten class, but the judge should be permitted to exercise his judgment in the light of what he saw and heard, as well as upon those matters which form a part of the record before the court. Such a ruling should be reversed only upon a clear showing that the judge committed an abuse of discretion. Certainly, if there is any doubt that the mental processes of the judge in making his ruling were arbitrary or capricious, it should not be said that he abused his discretion.

That the trial judge did not abuse his discretion in granting plaintiffs' motion for a new trial is manifest from the record before this court, and I agree with the majority of

the District Court of Appeal, Third Appellate District, that the order granting such motion should be affirmed. I, therefore, adopt as part of this dissenting opinion the able and learned opinion prepared by Presiding Justice Adams of the District Court of Appeal, Third Appellate District, when this case was before that court. Said opinion was as follows:

"This is an appeal from an order granting plaintiffs a new trial under the provisions of subdivision 3 of section 657 of the Code of Civil Procedure, to wit, accident or surprise which ordinary prudence could not have guarded against, caused by the nonappearance of a witness subpoenaed and relied upon by plaintiffs as a rebuttal witness. In support of their motion for a new trial plaintiffs filed five affidavits, while defendant filed two. From these affidavits and from the record in the case it appears that the trial was commenced on the 25th day of June, 1946, and a verdict in favor of defendant returned on June 27th.

"Plaintiffs sought damages for severe injuries sustained by Mrs. Kauffman in a collision between an automobile operated by her, and an automobile owned and operated by defendant, which collision occurred on the streets of Auburn on January 4, 1946, and was alleged to have been caused by the negligence of defendant. In preparation for the trial, and prior to June 23d, defendant subpoenaed as a witness one Rudolph Erends, a resident of Truckee, who was employed by the Southern Pacific Company as a locomotive engineer, and had witnessed the accident. On June 22d, Erends was also served with a subpoena to appear as a witness for plaintiffs. On June 24th, one of defendant's attorneys telephoned to Truckee for the purpose of informing Erends that he would not have to respond to the subpoena served on him in behalf of defendant, but, failing to reach the witness, left word with someone at the Truckee roundhouse. The message as received by Erends was that he would not have to respond to the subpoenas. He then so advised his employer, with whom he had previously made arrangements to be absent from his work, and was thereupon ordered to leave on a scheduled run.

"At noon on the second day of the trial, at the conclusion of defendant's evidence, plaintiff's attorney, who had expected to use Erends as a rebuttal witness that afternoon, seeing that the witness was not in court, asked plaintiff Frederick Kauffman to telephone him. Kauffman did so and

was advised by Erends that he would not be able to appear as he was leaving immediately on a scheduled run as a locomotive engineer. On receiving this information plaintiffs' counsel did not request a continuance of the trial, but proceeded therewith when Erends failed to answer to the call of the bailiff made during the afternoon.

"After a hearing on the motion for a new trial the trial court stated in a written opinion that the nonappearance of the witness was not due to any negligence or lack of diligence on the part of plaintiffs, that his testimony was material in that it would have contradicted that of defendant on important matters such as the speed at which defendant's car had entered the intersection and was traveling at the time of the impact, and that it was not cumulative; and that for said reasons a new trial should be granted.

"Appellant urges that the affidavits show that plaintiffs' counsel knew at noon on June 26th, that Erends was not present, and that he would not respond to plaintiffs' subpoena; and that defendant's attorney Kroloff at that time advised plaintiffs' attorney that he should ask for a continuance; but that plaintiffs' attorney refused to do so; and that, because of such failure to ask for a continuance the motion for a new trial should have been denied.

"Erends, in an affidavit in support of plaintiffs' motion, averred that he saw the accident, and that defendant's automobile entered the intersection at a speed of from 35 to 40 miles per hour and was so traveling when it struck plaintiffs' car; and that he would have so testified at the trial. He also deposed that the message received by him from defendant's counsel was that he would not have to appear in response to either of the subpoenas served upon him; and that when plaintiff Kauffman telephoned him at noon on June 26th, he told Kauffman that he had been advised that his presence was not required, and that he could not appear because he had been assigned to immediate duty by his employer.

"Appellant urges here that the trial court abused its discretion in granting a new trial, in view of the allegations of the affidavits, and that this court should reverse its order.

"It is settled that a motion for a new trial is, to a large extent, addressed to the sound legal discretion of the court to which the application is made; and it has often been said that its action will not be disturbed on appeal in the absence of a clear and affirmative showing of a gross, manifest or

unmistakable abuse of discretion. See *Fennessey* v. *Pacific Gas & Electric Co.*, 10 Cal.2d 538, 544 [76 P.2d 104]; *Mazzotta* v. *Los Angeles Railway Corp.*, 25 Cal.2d 165, 169 [153 P.2d 338]; *Prescott* v. *City of Orange*, 56 Cal.App.2d 144, 150 [132 P.2d 523]; *Whitfield* v. *Debrincat*, 18 Cal.App.2d 730, 733 [64 P.2d 960.] In the latter case it was said that where there appears to be reasonable or even fairly debatable justification therefor, an order granting a new trial will not be set aside, although a contrary order might not be disapproved or the appellate court might be inclined to take a different view. And this rule is applicable where the ground for the motion is surprise (20 Cal.Jur. 67).

"Appellant urges, however, that in this case the motion for a new trial should not have been granted because, though plaintiffs' counsel knew that Erends was not present and would not appear, they made no request for a continuance. While this might have justified the refusal of the motion had the trial court been satisfied that plaintiffs had not used reasonable diligence to procure the attendance of the witness, nevertheless it was within the province of that court to determine from the affidavits on file and the record in the case not only the question of diligence but whether the absence of the witness resulted in injury to plaintiffs.

"Appellants rely upon *Baker* v. *Berreman*, 61 Cal.App.2d 235 [142 P.2d 448], but there the facts were quite different. The absent witness had never been subpoenaed nor had any attempt been made to secure his deposition; also it was known two days before the trial date that the witness would not be able to attend. In the case before us plaintiffs had duly subpoenaed the witness and did not know until noon of the second day that he would not appear, and by that time the taking of evidence was largely completed, and it was concluded that afternoon, though the case was not submitted to the jury until the 27th. Also, Erends' nonappearance was apparently due to the acts of defendant's counsel because of the manner in which they had advised Erends that they did not desire his testimony. In *Baker* v. *Berreman* it is recognized that the general rule requiring the presentation of a motion for a continuance when a party is taken by surprise is not inflexible but is to be given a reasonable application. It was so held in *Delmas* v. *Martin*, 39 Cal. 555, 557-558, where a motion for a new trial had been denied, but the Supreme Court reversed the order, stating:

" 'The general rule undoubtedly is, that a party surprised on a trial must apply for relief at the earliest practicable moment, and in such method as to produce the least vexation, expense and delay. He will not be allowed to speculate on the chances of a favorable decision on other points, and if he fails on these, fall back on his motion for new trial on the ground of surprise. (*Schellhous* v. *Ball,* 29 Cal. 609.) But while this is the general rule, cases may and do frequently arise in which it ought not to be enforced. In *Rodriguez* v. *Comstock* (24 Cal. 85), it was considerably relaxed in favor of a party who was deceived by his own witness in respect to the facts to which he would testify, and who failed to move for a continuance. But, in relaxing the rule, it should be done only where the surprise is clearly established, and the consequences of it can be avoided on another trial; and it must also be apparent that the party has not been guilty of *laches,* and has acted in good faith in omitting to apply for relief at an earlier stage in the proceedings. In this case, the deed from Black to the plaintiff was the last evidence offered in the cause, and the Court immediately proceeded to charge the jury. It may well be, that in the last stage of a jury trial, at the conclusion of the evidence, sufficient opportunity may not have occurred to enable the defendants and their counsel to decide, deliberately and discreetly, what course it was proper to pursue in respect to the last item of proof which was offered in the cause. We perceive nothing in the record to justify the belief that the defendants and their counsel were not acting in good faith in omitting to apply for a continuance, and are satisfied that they were guilty of no *laches;* that they were surprised, in the sense of the statute, by the deed from Black to the plaintiff, and that they can probably overcome the effect of that deed, if allowed an opportunity to do so. We think this is a proper case in which to relax somewhat the rule to which we have reverted.'

"Also see *Whitfield* v. *Debrincat,* supra.

"In the case before us the wisest course for plaintiffs to pursue may have been to ask for a continuance when it was learned that Erends would not be present. But the trial court's opinion indicates that it believed that plaintiffs were taken by surprise when Erends failed to appear in answer to their subpoena; that sufficient opportunity was not afforded them and their counsel to decide deliberately and discreetly, what course it was proper to pursue, that they acted in good

faith and were not guilty of laches, that the testimony of Erends was important in view of the fact that defendant had testified that his automobile was practically stopped at the time of the impact, and that in view of the whole situation presented and the importance of the testimony of Erends the ends of justice would be best met by granting the new trial as requested. That court was in a better position than we are to decide those questions; and we cannot say that in so doing its conduct constituted such an abuse of discretion as necessitates a reversal.''

In my opinion the order should be affirmed.

Shenk, J., concurred.