[Civ. No. 2255. Third Appellate District.—June 15, 1921.]

JACOB RUDIN et al., Respondents, v. W. E. LUMAN, Appellant.

[1] EVIDENCE—CONFLICTS AND INCONSISTENCIES IN—APPEAL.—The reviewing courts are not charged with the duty of weighing testimony and thus determining conflicts which may exist therein. The law has committed that responsibility to the trial courts; and this is also true as to any inconsistencies which may appear in the testimony of a particular or any witness.

[2] ID.—EFFECT OF INCONSISTENCIES—WEIGHT OF EVIDENCE—APPEAL. While inconsistencies in the testimony of a particular or any witness are always to be considered by the trial court in its determination of the question of how much credence, if any, should be given the witness whose testimony is thus characterized, and, therefore, how much weight his testimony is entitled to, if they do not develop a palpably incredible or improbable story, the acceptance or rejection of the testimony by the trial court is conclusive upon a reviewing court.

[3] ID.—NEW TRIAL—SURPRISE.—It is no ground for granting a new trial because of surprise, where the "surprise" is caused by evidence which is clearly within the issues presented by the pleadings.

[4] ID.—FAILURE TO ANTICIPATE EVIDENCE—WHEN GROUND FOR NEW TRIAL.—If testimony in proof or denial of some important fact or circumstance relevant to the issue is given against a party, and he finds himself unprepared to make a counter-showing relative thereto because he did not anticipate that any such testimony would be given, he cannot, if the decision is against him, justly claim that he is entitled to a new trial on the ground of surprise caused by the testimony so given, or the denial so made, unless such testimony or denial is so far afield from what might reasonably and naturally have been expected to be made in view of the nature of the issues to be tried as to place him unexpectedly at a serious disadvantage or to cause him to suffer injury therefrom

without any default or negligence of his own, which· ordinary prudence could not have guarded against.

[5] ID.—WHAT CONSTITUTES SURPRISE—GIVING OF UNEXPECTED TESTI·
MONY.—The surprise which section 657, subdivision 3, of the Code of Civil Procedure contemplates shall constitute a ground for the granting of a motion for a new trial must be the result of some fact or circumstance or situation occurring at the trial which could not in the nature of the case reasonably have been antici- pated would arise and which is of such importance or magnitude in its influence upon the result arrived at from the trial as to have produced as against him or his rights injury or damage. The mere giving of testimony contrary to the interests of a party, or even the fact that false testimony has thus been given, although wholly unexpected by the party against whom it is given, will not itself always operate as a predicate for the awarding of the new trial of the issue.

[6] ID.—NEWLY DISCOVERED EVIDENCE—DISCRETION OF TRIAL COURT.—
The granting or refusing to grant a new trial on the ground of "newly discovered evidence," etc., is a matter which is addressed to the discretion of the trial court, with the exercise of which dis- cretion interference is not justified unless it is clearly made to appear that it has been abused.

APPEAL from a judgment of the Superior Court of Butte County.· H. D. Gregory, Judge. Affirmed.

The facts are stated in the opinion of the court.

Jerome D. Peters for Appellant.

J. O. Goldstein for Respondents.

HART, J.—The plaintiffs brought this action to recover from the defendant the sum of $663.25.

The complaint is in two counts, in the first of which it is alleged that the plaintiffs rented and hired to the de- fendant, between the eighth day of July, 1918, and the first day of November, 1918, fourteen head of work horses, "at the ·agreed price and rental of seventy-five cents per day for each horse; that the said defendant received the .said horses on the eighth day of July, 1918, and used and worked them continuously for the period of time" first here- inabove mentioned, and that by reason of the use of said horses so hired to defendant, the latter became indebted to the plaintiffs' in the sum of $771.75, of which amount

the defendant has paid plaintiffs the sum of $140, leaving a balance due and owing to them by defendant in the sum of $631.75. In the second count it is alleged that plaintiffs, between the eighth day of July, 1918, and the first day of November, 1918, sold and delivered to defendant a one-half set of harness at the agreed price of $20, and one "Yankee Bridger" at the agreed price of $11.50, making a total of $31.50, which the defendant has refused, and still refuses, to pay.

The defendant answered each count of the complaint with specific denials and also set up in bar of the action stated in each count the statute of frauds. (Civ. Code, sec. 1624, subd. 2.)

Judgment passed for the plaintiffs. Thereafter and in due time the defendant noticed and pressed a motion for a new trial, which motion was denied. Said motion was made upon affidavits and the minutes of the court, the grounds thereof being: Insufficiency of the evidence to justify the decision and judgment; "accident or surprise which ordinary prudence could not have guarded against"; newly discovered evidence material for said defendant, which he could not, with reasonable diligence, have discovered and produced at the trial.

This appeal is by the defendant from the judgment.

There are but two points urged for a reversal, viz.: 1. That the evidence does not support the findings; 2. That the court abused its discretion in denying defendant's motion for a new trial. Neither of these points can be sustained.

As to the first point, it is well first to explain that the defendant did not deny at the trial that he carried on and consummated the agreement for the hiring of the horses with the plaintiffs, but claimed that in making the agreement he was acting for one J. W. Taylor, and that he so informed plaintiff Jacob Rudin, between whom and defendant the negotiations culminating in the agreement were had, at the time the negotiations were under way.

It appears that the defendant was, at the time the transaction herein involved took place, a hay and grain broker in the city of Chico, and that he had a contract with the general government to supply it with a certain quantity of baled hay and straw; that, among others employed by

him to bale hay and straw for that purpose, was one J. W.
Taylor, who was running or overseeing the work of baling
by means of hay-presses at what the witnesses designated
as the "Nelson" place, in Butte County.

The plaintiff Jacob Rudin testified that, on .the seventh
day of July, 1918, the defendant called at his ranch and
proposed to Rudin to hire or rent a number of the latter's
work horses, to be used in the work of gathering and baling
hay and straw on the Nelson place. After some discussion
of the proposition, Rudin finally agreed to let defendant
have eleven head of his horses at the rate of seventy-five
cents per day for each horse. The defendant thereupon
employed one Conrad Shepp to take the horses to the
Nelson place, and the horses were used from the date of
the hiring until about the twenty-ninth day of September,
1918. On the sixteenth day of July, 1918, proceeded
Rudin's testimony, the defendant hired from plaintiffs, to be
used for the same purpose, three other horses, and used and
worked those from the date just mentioned until August 10,
1918. The same price as was agreed to be paid for the
use of the horses first obtained was to be paid for the use
of the last three hired by defendant. Jacob Rudin tes-
tified that the defendant paid him by his (defendant's)
check $140 on. account, and that after the defendant ceased
using the horses and they were returned to him he, on
several occasions, demanded of defendant a full settlement
of the amount due him, but that defendant, while not de-
nying his indebtedness to plaintiffs for the hire of the
horses, would put him off by saying that he was then
without sufficient money to extinguish the debt, explaining,
however, that the government was indebted to him (de-
fendant) in a large sum and that when he received payment
from the government he would pay what he owed to
plaintiffs.

Said plaintiff also testified that he let defendant have
the harness and the "Yankee Bridger" or "breeching"
mentioned in the second count of the complaint, but that
defendant had never paid for those articles. In this con-
nection it should be stated that, while it is not disputed
that the defendant obtained from plaintiffs the articles just
referred to, it is not clear from the evidence whether said
articles were sold to the defendant or merely loaned to

him by plaintiffs. The plaintiff Jacob did testify, however, that he made a demand on defendant for the value in money of the harness and breeching or their return, but that defendant stated that he did not know what had become of them, referred Jacob to J. W. Taylor for information as to their whereabouts, and that they (plaintiffs) had never received them back or their value in money, which he stated were the amounts, respectively, alleged in the complaint.

In his cross-examination of Jacob Rudin, counsel for the defendant undertook to induce him to say that, when defendant hired the horses, the latter stated to him (Jacob) that he (defendant) was acting in the transaction for said J. W. Taylor and that the latter was to compensate plaintiffs for the use of the horses. Counsel further likewise attempted to show by Jacob that he was paid by defendant the $140 on account upon a written order by Taylor on defendant, requesting such payment. In connection with the latter cross-examination, counsel for defendant exhibited to Jacob a writing purporting to be the order referred to.

In response to the cross-questioning above adverted to, Jacob Rudin positively testified that, at the time the agreement was made for the hire of the eleven head of horses, he did not know nor had he ever heard of J. W. Taylor; that defendant did not refer to Taylor when the negotiations were in progress for the hire of the horses, nor did he state to Jacob that he was acting for any other person but himself; that, as to the written order referred to, and which was given to him for inspection by counsel for defendant, he declared that he had never received such a writing from said Taylor or any other person; that he did not present such a paper to defendant at or before the time the latter paid him by check the $140, and that he had never seen the writing until it had been shown him by defendant's attorney during the course of the latter's cross-examination of him.

John Rudin testified that a few days prior to the day on which defendant hired and took possession of the eleven head of horses defendant approached and asked him whether he would hire the horses to him, to be used for the purpose above explained; that he replied that he did not approve

of letting his horses out for such use, but referred defendant to his (John's) brother Jacob.

Conrad Shepp testified that he was employed by defendant to take the horses to the Nelson place; that, after getting the horses to said place, he asked defendant for compensation for the services so performed and stated that he (Shepp) thought five dollars would constitute reasonable compensation for his labor; that defendant protested that the demand was exorbitant and "kicked about it" but finally paid the witness the amount demanded.

The above is in substance the evidence presented by the plaintiff. A different story is told by the defendant, and in a measure it is corroborated by the testimony of other witnesses. It is not necessary to present herein a statement of the facts to which the defendant and his witnesses testified. It is enough to say that the adversary showing thus made had the effect only of producing a conflict in the evidence addressed to the vital points of the controversy, and as to conflicts in the evidence upon a disputed question of fact, which are substantial, the rule is too well known and understood to require its repetition here. [1] The reviewing courts, as often it has been repeated, are not charged with the duty of weighing testimony and thus determining conflicts which may exist therein. The law, with singular wisdom, has committed that responsibility to the trial courts; and this is also true as to any inconsistencies which may appear in the testimony of a particular or any witness. [2] Such inconsistencies, if any there be, are, of course, always to be considered by the trial court in its determination of the question of how much credence, if any, should be given the witness whose testimony is thus characterized and, therefore, how much weight his testimony is entitled to. If they do not develop a palpably incredible or improbable story, then the acceptance or rejection of the testimony by the trial court is conclusive upon a reviewing court. In this case, the circumstance of the presentation in evidence of the purported written order of the said J. W. Taylor upon defendant, requesting the latter to pay plaintiffs $140, the said payment to be charged by defendant to the account of Taylor, is strongly emphasized by the defendant here as confirmatory of his contention or defense that the horses were hired by him for Taylor and

not for himself. That circumstance, it may be conceded, reveals rather a strange situation in the case, yet Jacob Rudin, as seen, denied that he ever presented such an order to defendant or that he had ever seen the writing introduced in evidence until the trial of this action was in progress. Thus a question was raised as to whether said Rudin had in fact ever been given such an order by Taylor, and it was for the trial court to determine that question upon the conflicting evidence addressed thereto. Moreover, even if it were true that defendant was acting for Taylor in the transaction eventuating in the hiring of the horses, and that such an order was given Jacob Rudin and that upon it the defendant paid plaintiffs the $140, still, as may be recalled, Jacob Rudin testified that at no time did defendant inform or say to him that he was acting for Taylor in said transaction. If this is true, then the plaintiffs had the right to act in the transaction upon the assumption that they were dealing directly with defendant and, besides, having thus held himself out as the principal in the deal, the defendant became liable to plaintiffs for the contract and its legal consequences.

We are not able to say that the court abused its discretion in denying the defendant's motion for a new trial.

We have already in the above discussion considered the first ground of the motion, to wit: That the evidence is insufficient to justify the decision and judgment of the court. We now have only to consider the second and third grounds of the motion, viz.: "Accident or surprise which ordinary prudence could not have guarded against," and "newly discovered evidence material for the defendant which he could not, with reasonable diligence, have discovered and produced at the trial." As stated, the defendant presented affidavits in support of the motion, one of said affidavits being by the defendant himself and the other by the J. W. Taylor referred to above.

The defendant in his affidavit stated that said J. W. Taylor was the party who hired said horses and that about two weeks prior to the time of the trial of this action he called on said Taylor, "who told him that he would be present at said trial, without need of subpoena, and at said trial would testify that he was the one who had hired said horses through the agency of the defendant, and that he had had

money demanded of him for said hire by the plaintiffs, and as a result of one of said demands had given to the plaintiff Jacob Rudin an order in writing upon the defendant W. E. Luman, for a certain sum of money, which said order requested said Luman to pay Jacob Rudin the amount stated therein and to charge the same to the account of J. W. Taylor, which- said order is now in evidence presented at the trial of the foregoing case; that relying upon the promise of said Taylor to be present and be a witness, the defendant prepared for trial and only discovered at the time of the trial that the said Taylor would not be there." The defendant further deposed ":that he was taken by surprise at the trial by the denial of Jacob Rudin that the order above referred to was presented by said Rudin to the defendant and that the latter accepted the same, and consequently the defendant did not produce any witness to the fact of such presentation of such order by said plaintiff except himself, but at the time of the presentation of such order M. L. Warnick was working in his office and the defendant has discovered since said trial that she remembers the presentation of said order by the said plaintiff Jacob Rudin, and of his accepting a check in accordance therewith."

J. W. Taylor stated in his affidavit that he hired the horses mentioned in the complaint from the plaintiffs for the purpose of running his baling outfit and that he was responsible for the hire thereof; that if he had been present at the trial of said action he would have so testified; that the defendant came to him two weeks prior to said trial in Chico, Butte County, and asked him if he would be a witness at the time of said trial on June 8, 1920, and that he told said defendant that he would be such a witness and be present at said time; that subsequent thereto and prior to the date of said trial, and in order to avoid being a witness at said trial, the said affiant, without acquainting the defendant with the fact, left the county of Butte and went to the town of Willits, in Mendocino County, California; "that the reason he so left was that he would have had to testify that the horse hire sued upon was his hire, and that he did not wish at that time to testify thereto, owing to the fact that the plaintiffs in said action might have sued him therefor " Taylor also deposed that the

order referred to above was actually delivered by him to the plaintiff Jacob Rudin on the date in said order specified, and that it was delivered to Rudin for the purpose of presentation to defendant to the end that said defendant would pay the amount of said order.

[3] It is well settled that it is no ground for granting · a new trial because of surprise, where the ''surprise'' is caused by evidence which is clearly within the issues presented by the pleadings. (*Santa Cruz Rock Pavement Co.* v. *Bowie,* 104 Cal. 286, [37 Pac. 834]; *Francisco* v. *Benepe,* 6 Mont. 243, [11 Pac. 637]; *Wilson* v. *Waldron,* 12 Wash. 149, [40 Pac. 740]; *Salida Bldg. & Loan Assn.* v. *Davis,* 16 Colo. App. 294, [64 Pac. 1046]; *Washington* v. *Byers,* 7 Kan. App. 812, [53 Pac. 150].)

A party to an action, after issue has been joined, is always to be presumed to know precisely what he is expected to prove or disprove to prevail. In other words, presumably he knows what the issue to be tried is, and it is to be assumed that he will not, without protest or ob- · jection, enter upon the trial of the issue in the absence of such preparation as he may make to meet such issue or any questions of fact relevantly arising or which may naturally be expected to arise under the issue or issues as framed by the pleadings. [4] If, as is often true, testimony in proof or denial of some important fact or circumstance relevant to the issue is given against a party, and he finds himself unprepared to make a counter-showing relative thereto because he did not anticipate that any such testimony would be given, he cannot, if the decision is against him, justly claim that he is entitled to a new trial on the ground of surprise caused by the testimony so given, or the denial so made, unless such testimony or denial is so far afield from what might reasonably and naturally have been expected to be made in view of the nature of the issues to be tried as to place him unexpectedly at a serious disadvantage or to cause him to suffer injury therefrom without any default or negligence of his own, which ordinary prudence could not have guarded against. (*McGuire* v. *Drew,* 83 Cal. 225, [23 Pac. 312]; *Brandt* v. *Krogh,* 14 Cal. App. 39, 60, [111 Pac. 235].)

In the instant case, the question whether the defendant hired the horses was the sole issue. The precise defense

which defendant expected to develop by his proofs was not disclosed by his answer, he merely denying the allegation of the complaint that he hired the horses. He, of course, when he filed his answer, well knew the theory or the facts upon which he expected and intended to rely to defeat the plaintiffs' claim, and knowing all this, as well as the claim set up against him by the plaintiffs in their complaint, he must necessarily have expected that the latter would attempt by proof to negative the effect of any important fact or circumstance which he might undertake to establish in support of the denials of his answer. Of course, he might have been surprised on hearing the denial by Jacob Rudin that he was given by Taylor the order on him (defendant) for money on account of the hire of the horses, or that he (said Rudin) ever saw said order until the trial; but the surprise thus brought to him is not the "surprise" which the statute (Code Civ. Proc., sec. 657, subd. 3) contemplates shall constitute a ground for the granting of a motion for a new trial. **[5]** The "surprise" mentioned by the statute must be the result of some fact or circumstance or situation occurring at the trial which could not in the nature of the case reasonably have been anticipated would arise and which is of such importance or magnitude in its influence upon the result arrived at from the trial as to have produced as against him or his rights injury or damage. The mere giving of testimony contrary to the interests of a party, or even the fact that false testimony has thus been given, although wholly unexpected by the party against whom it is given, will not itself always operate as a predicate for the awarding of a new trial of the issue. Of course, if a vanquished party has been misled by a witness as to the nature of the testimony he intends to give, or if perjured testimony has unexpectedly been given, and it may justly be said that in either case such testimony has influenced the decision in any manner or degree, it might be proper to grant a new trial upon a satisfactory showing by such party either that, relying upon the statement of the witness as to what he would testify to, he made no preparation to have at the trial testimony, available to him, which would have tended to overcome the effect of the testimony of such witness,

or that the testimony was false or perjured. No such showing was made in this case.

[6] As to the other ground of the motion, to wit, "newly discovered evidence," etc., it is also to be remarked that the granting or refusing to grant a new trial on that ground is a matter which is addressed to the discretion of the trial court, with the exercise of which discretion interference is not justified unless it is clearly made to appear that it has been abused. This rule is so thoroughly settled in this state that it has become elementary in our practice, and the citation of authorities to confirm this statement is not necessary. But the "newly discovered" evidence to which the affidavits presented by defendant refer is, as a matter of fact, not newly discovered. Of the existence of that evidence before and at the time of the trial the defendant was, of course, fully aware; and that Taylor's testimony would be of singular importance as tending to establish his defense, he also knew, for not only in his affidavit does he depose but at the trial he testified that, some ten days or two weeks prior to the date fixed for the trial, he verbally informed Taylor of the date set for the trial, and likewise requested him to be present and testify in his (defendant's) behalf. Further than that, defendant made no effort to secure the attendance of Taylor at the trial. He did not have a subpoena issued for him or take any legal steps to secure Taylor's presence at the trial. Moreover, when the case was called for trial his counsel announced that defendant was ready to proceed, no objection to going on with the trial upon the ground of the absence of Taylor having been made by him. It was for the trial court to say, from all the circumstances disclosed, whether the defendant had exercised proper or reasonable diligence in attempting to procure the attendance of Taylor at the trial. As above stated, we are not prepared to hold that the trial court was wrong in deciding that such diligence was not shown, or that, upon the whole record, the court abused its discretion in denying the motion for a new trial upon the ground here considered.

The judgment is affirmed.

Finch, P. J., and Burnett, J., concurred.