[Civ. No. 12482.   First Dist., Div. Two.   Nov. 22, 1943.]

EDDIE JENNINGS, Respondent, v. AMERICAN PRESI-
DENT LINES, LTD. (a Corporation), Appellant.

418

Treadwell & Laughlin, Charles M. Haid, Jr., and Raymond M. Farley for Appellant.

John J. Taheny for Respondent.

STURTEVANT, J.—This was a suit for personal injuries under the Jones Act [Merchant Marine Act, sec. 33; 41 Stats. 1007, chap. 250; 46 U.S.C.A., sec. 688] against the plaintiff's employer. The defendant employer appeals from a judgment in favor of the plaintiff employee which was entered following the jury verdict for plaintiff.

The injury of which plaintiff complained occurred on the high seas, while the plaintiff was employed by the defendant as a scullion. The plaintiff and George Gonzales, one of his

co-helpers, both weighing under 140 pounds, were carrying a keg of cleaning powder weighing 125 pounds from the store room of the vessel up a stairway to the pantry. The plaintiff was carrying his end of the keg by ice tongs, preceding Gonzales who carried the keg in his bare hands up the stairs. At the top of the stairs the keg left Gonzales' hands, jerking the keg away from plaintiff without warning and thereby severely injuring his back. Gonzales did not warn plaintiff that he would let go of the keg; he did not trip on the stairs; nor did he make any effort to hold the container after it left his hands.

Only written statements by Gonzales were introduced at the trial, one given to plaintiff and one to defendant at different dates. Although the defendant on the day set for trial requested a continuance in order to obtain the deposition of Gonzales, the court denied the motion and plaintiff stipulated that the statement given by Gonzales to defendant could be read in evidence. Following the entry of judgment the defendant moved for a new trial on the grounds of surprise and newly discovered evidence which could not have been obtained before. It attached to its motion the deposition of Gonzales which it had just received.

The signed statement taken by defendant on February 24, 1942, in New York from Gonzales contained the statements that he, Gonzales, "let the container drop," that it had "slipped from (his) hands," and "that Jennings had more success with the ice tongs," the surface of the container being slippery. On the trial the plaintiff was allowed to testify that after the container fell, Gonzales' hands were hanging limply at his sides. He was not allowed to testify to his conclusion concerning how it fell.

The chronological sequence of events leading up to the trial is necessary in order to determine the merits of the defendant's claim of diligence in attempting to get Gonzales' deposition prior to the trial of the case. September 7, 1941, the complaint was filed. October 3, 1941, the answer was filed. October 11, 1941, memo of motion to set the case for trial was filed. October 21, 1941, defendant learned the name of Gonzales. October 25, 1941, plaintiff shipped to sea and the trial of the case was continued at his request. October 29, 1941, the statement of Gonzales was given to plaintiff's attorneys who located him through the hiring hall. November 25, 1941, Gonzales shipped out of San Francisco. February 24, 1942, Gonzales was located in New York by defendant, at

which time his statement was obtained. No deposition was taken at this time because defendant wanted to check Gonzales' statement. April 6, 1942, plaintiff's and defendant's attorneys arranged for taking Gonzales' deposition in New York upon a written stipulation and interrogations. April 11, 1942, plaintiff's deposition was taken. April 17, 1942, the trial of the case was set for May 25, 1942, at request of plaintiff and with consent of defendant. April 28, 1942, one week after, promised cross-interrogatories were delivered by plaintiff. April 30, 1942, after request of plaintiff, defendant prepared written stipulation to take Gonzales' deposition in New York which was later agreed to stand for deposition in New Orleans where it was thought Gonzales was. May 26, 1942, a motion for continuance was made and denied. June 1, 1942, the trial commenced.

■ The defendant contends that there is no evidence of negligence in the record. We think there is. The conceded facts show that the plaintiff and Gonzales, two fellow employees, were carrying the container and had nearly reached the place where it was to be delivered. To set it down properly the two men should have acted jointly and with some mutual understanding. But, as they attempted to enter the pantry door, Gonzales' end fell to the floor. Before it fell he did not inform the plaintiff that it was about to fall. In his written statement made February 24, 1942, Gonzales made several recitals as to what did happen. The jury was entitled to select that recital which it deemed most consonant with the evidence. One of the recitals was that he, Gonzales, "let the container drop." If the jury adopted that recital, and from its verdict we must assume it did, such recital was evidence of negligence on his part and sustains the verdict as rendered. That is the acts of Gonzales as shown by the facts recited show that he acted carelessly to the injury of the plaintiff. (*Koukouris* v. *Union Pac. R. Co.*, 193 Mo.App. 495 [186 S.W. 545] ; *Texas Pipe Line Co.* v. *Johnson*, 169 Ark. 235 [275 S.W. 329] ; *Newark Gravel Co.* v. *Barber*, 179 Ark. 799 [18 S.W.2d 331].)

■ But the defendant replies the written statement contained other recitals, the statement was in writing, it should have been construed by the court and effect given to all its recitals, and, as so construed, it was in effect a statement that Gonzales' hold "slipped." (Code Civ. Proc. sec. 1858.) The plaintiff answers that said section is not applicable. He cites and relies on *Marine Insurance Co. of Alexandria* v. *Young,*

5 Cranch (U.S.) 187 [3 L.Ed. 74, 76]. He quotes as follows: "Can this court reverse for error in fact? Suppose we should be of opinion that the court below ought to have granted a new trial, is it not an error of fact? I have another doubt. Whether it be the ground of a writ of error, if a judge gives or refuses to give an opinion on matter of fact. A written contract, a bond, note, etc., whatever is the act of the party, is a subject for the construction of the court; but this is not the act of the party, but a mere deposition. If the court can give the construction of depositions, they may as well try the whole cause when all the evidence consists of depositions." The statute relied on by defendant provides: "In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained thereon, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." (Sec. 1858, Code Civ. Proc.) The defendant contends that by the clear terms of the statute the court should have construed the statement made by Gonzales but it did not do so and allowed the jury to construe it as though it were a copy of oral testimony. The trial court did not err. The word "instrument" is used in many places in our statutes. Its meaning is well settled. (*Weisbrod* v. *Weisbrod*, 27 Cal.App.2d 712 [81 P.2d 633].) At page 719 the court quotes with approval: "Generally the term 'instrument' as applied to documents necessarily imports a paper writing; but every paper writing is not necessarily an instrument within the settled statutory meaning of the term. With reference to writings the term 'instrument' as employed in our statutes has been defined to mean an agreement expressed in writing, signed and delivered by one person to another, transferring the title to or creating a lien on real property, or giving a right to a debt or duty." To the same effect are *Chipman* v. *Morrill*, 20 Cal. 130, 137; *Hoag* v. *Howard*, 55 Cal. 564; *Miller* v. *Dunn*, 72 Cal. 462, 466 [14 P. 27, 1 Am.St.Rep. 67]; *Beers* v. *California State Life Ins. Co.*, 87 Cal.App. 440, 457 [262 P. 380]; *Lattin* v. *Gillette*, 95 Cal. 317, 322 [30 P. 545, 29 Am.St.Rep. 115]; *People* v. *Fraser*, 23 Cal.App. 82, 84 [137 P. 276]; *Cardenas* v. *Miller*, 108 Cal. 250, 256 [39 P. 783, 41 P. 472, 49 Am.St.Rep. 84].

The defendant also claims that the trial court erred in denying its motion for a continuance. We think it may not be said the trial court abused its discretion. The motion

was made May 25, 1942. It was supported by the affidavit of Mr. Treadwell. In that affidavit he averred:

"That he is one of the attorneys for the defendant in the above entitled action; that said action was commenced on September 17, 1941, but shortly thereafter the plaintiff Jennings went to sea and it was impossible to get his deposition; that we requested Mr. Taheny to notify us on his return so that we could take his deposition, but we were unable to take the same until the 11th of April 1942.

"We were informed that the person referred to in the complaint as assisting plaintiff at the time of the injury complained of was named George Gonzales, and we desired to get his testimony as soon as the deposition of the plaintiff was taken so we would know the nature of the plaintiff's claim. On February 24, 1942, we located Gonzales in New York and he made a statement to the Shipowners Claims Bureau, a copy of which is attached hereto marked Exhibit 'A'. On April 6, 1942, we delivered to Mr. Taheny, attorney for the plaintiff, interrogatories to be propounded to Gonzales at New York, and urged Mr. Taheny to put in his cross-interrogatories as soon as possible, but he did not deliver his cross-interrogatories to our office until April 28, 1942. A stipulation was then signed for the taking of the deposition of Gonzales in New York and was sent to New York, but by the time the papers arrived there Gonzales could not be located, and we were informed that he had sailed, probably for New Orleans. We then sent the papers to attorneys in New Orleans but they were unable to locate Gonzales and as a result we were unable to obtain his deposition. As far as we know, there were no witnesses to the accident other than Gonzales and plaintiff Jennings, and it is impossible for us to have the benefit of the testimony of Gonzales at the present time." The exhibit "A" therein referred to was as follows: "SS PRESIDENT PIERCE—Injury to Eddie Jennings, July 8, 1941.

"My name is George Gonzales and I am at present employed as Messman aboard the SS. Galveston. My mail address is in care of the N.M.U. Hall at whatever port I sail for. I have no relatives in this country.

"Back in July, I made one trip as scullion aboard the SS. President Pierce. I do not have my discharge papers on hand and I therefore am unable to state exactly when I signed on the President Pierce and when I signed off.

"At the time I was employed on the SS. President Pierce, Eddie Jennings was also employed on that ship as scullion. On

or around July 8, 1941, both Jennings and I went down into the storeroom about three decks below the galley, in order to bring up a container of 'trukko,' (turco) a cleaning powder. This container weighed about one hundred or more pounds, was about three feet high when rested on the deck and 1½' in diameter. It required two men to carry it and there was no catch on it by which one could grab it.

"In carrying it up, Jennings used an ice hook to hold the container. I used my bare hands and as he carried the front part of the container, I took the last part of it. Jennings preceded me up the stairs.

"We carried the container up one flight of stairs, then we had to carry it along the passageway (I forget which deck) aft to another stairway. As we reached the top of this second stairway, Jennings carrying the front end of the container and I the latter end, my end of the container slipped from my hands. The container slipped from my hands. Jennings was standing at the time on the door sill at the top of the stairs, leading into the pantry. Jennings, after I let the container drop, let his end go and began grabbing his back. I rolled the container the rest of the way. Jennings went to the doctor.

"The surface of the container was slippery and I was using my bare hands. Jennings had more success with the ice hooks. It was customary to bring such large quantities of cleaning fluid up to the galley. We were acting under orders of the Chief Cook at the time.

"Jennings was laid up from work for a few days after the accident occurred. I left the ship at San Francisco. The last time I saw Jennings, he was at the Union Hall on the West Coast. He told me he had a lawyer and I gave a statement of how the accident took place to his lawyer.

"There were no other witnesses to the accident."

A bill of exceptions shows that the following proceedings were had:

"Thereafter, and on the 26th day of May 1942, the said motion came on regularly for hearing before the Presiding Judge of said Court, Hon. E. P. Mogan, Mr. Charles M. Haid, Jr., on behalf of Treadwell & Laughlin, appearing for the defendant, and John J. Taheny appearing for the plaintiff, and thereupon the court read the notice of motion and the affidavit and exhibit attached thereto and asked the attorney for the defendant to state what he would be unable to prove unless the testimony of the absent witness was received; and the attorney for the defendant thereupon stated to the

court that the absent witness was the only witness to the action other than the plaintiff, and therefore he felt that the defendant should have an opportunity to procure his testimony; the court thereupon asked the attorney for the defendant why the deposition of said witness was not taken at the time the signed statement was taken from him on February 24, 1942, a copy of which signed statement was attached to and made a part of the affidavit filed in support of the motion for continuance, and the attorney for the defendant stated that he wished to check on the truth of the statement as made by said Gonzales before taking his deposition; the attorney for the plaintiff thereupon stated that his client was a seafaring man who had just returned after a voyage of several months, and that it would work a hardship upon him to permit a continuance of the action for an indefinite period of time; that court asked the attorney for the plaintiff whether, in the event that the defendant was unable to produce the witness at the trial, he would consent to the reading of said statement of said witness at the trial, and asked said attorney for the plaintiff whether he would stipulate that it might be read into evidence by either party; that the attorney for the defendant voiced no objection or protest against the suggestion to the court that the defendant be permitted to read the same, and the court thereupon stated that it seemed to the court that the defendant's motion for a continuance should not be granted if the plaintiff is willing to stipulate that the defendant can read the statement at the trial; the attorney for the defendant thereupon stated that as long as the motion is being denied there is nothing more that he can do about it. No other or further evidence was introduced at said hearing.

"Thereupon the court made an order denying said motion for a continuance. Said defendant now excepts to said order." The reporter's transcript shows that the plaintiff, without objection, read in evidence the said written statement.

In reply to the defendant's claim that the trial court abused its discretion in refusing a continuance the plaintiff asserts that the defendant had ample opportunity to take the deposition of Gonzales if it had been diligent. That answer is sufficient. Gonzales was in San Francisco from September 7 till November 25, 1941. Later he was located in New York in February, 1942. Defendant did not act till April 6, 1942. It stated that it did not act before because it wanted to take the deposition of the plaintiff. The latter was in San Francisco from September 7, till October 29, 1941. His deposition

was not taken until April 11, 1942. When and where it was taken the record does not show nor does it show why it was not taken before.

At another place in the record the defendant says that it delayed taking the deposition because the defendant desired to interview the cooks and stewards regarding the statement of Gonzales. But the defendant does not state facts showing that its delay was excusable.

The plaintiff contends that the fact the parties stipulated that the statement of Gonzales might be admitted in evidence on the request of either party, and that later it was admitted without objection or exception, cured any error in denying defendant's motion. That contention is sound. (*Foster* v. *Hudson*, 33 Cal.App.2d 705, 708 [92 P.2d 959].)

The plaintiff also asserts that the affidavit used in support of the defendant's motion was insufficient because it did not state what the plaintiff expected the witness Gonzales would state. The defendant answers that the law "does not require one to set forth more than he knows." That answer is insufficient. The defendant was asking for a continuance. It was bound to show what the witness Gonzales would state if called as a witness. Under the statute the defendant was required to make its showing by affidavits. (Code Civ. Proc., sec. 595.) In that section it is provided: ". . . A motion to postpone a trial on the ground of the absence of evidence can only be made upon affidavit showing the materiality of the evidence expected to be obtained, and that due diligence has been used to procure it. The court may require the moving party, where application is made on account of the absence of a material witness, to state upon affidavit the evidence which he expects to obtain; and if the adverse party thereupon admits that such evidence would be given, and that it be considered as actually given on the trial, or offered and overruled as improper, the trial must not be postponed. . . ."

When the purported affidavits used on a motion asking for a continuance do not allege facts showing the materiality of the testimony sought to be produced it is not error to deny the motion. (*Everts* v. *Will S. Fawcett Co.*, 3 Cal.App.2d 261 [38 P.2d 868].)

The defendant also claims that the trial court should have granted its motion for a new trial on the ground of accident and surprise. It refers to that part of the record in which it is recited that on April 6, 1942, it delivered its interrogatories and Mr. Taheny promised he would deliver

plaintiff's cross-interrogatories during the following week (April 12-18) but Mr. Taheny did not deliver them until April 28, 1942. Continuing it claims that in the meantime Gonzales had left New York. Bearing in mind all of these contentions and taking into consideration the other dates and other circumstances hereinabove set forth, we think the ruling on the motion for a new trial presented solely questions of fact which were addressed to the trial court and that we may not say it abused its discretion in ruling thereon.

It was alleged in plaintiff's complaint that the defendant's principal office is located in San Francisco, that the accident occurred on the SS. President Pierce, and that said ship was being operated by defendant between San Francisco and the Orient. Manifestly the defendant's attorneys had access to the documents showing the names and addresses of the members of the crew. The record shows no facts preventing the defendant from ascertaining and informing its attorneys at once of the names of the cooks and stewards on board and also of the names of the scullions who were engaged in moving the container. The gravamen of the action was negligence. There were no witnesses except the two scullions who were moving the container. The plaintiff was one and on October 29, 1941, defendant was informed that the plaintiff claimed George Gonzales was the name of the other. The defendant asserts it did not take the deposition of the latter because it wanted first to take the deposition of plaintiff. But it did not act. It cites no authority sustaining that excuse. It could be made with equal force in every case. It also says it wanted to interview the cooks and stewards. No fact is shown which prevented it from doing so. But it did not act.

The gist of defendant's contention regarding the denial of its motion for a new trial is the same as its contention that the trial court erred in denying its motion for a continuance. We will not repeat what we have said above on the subject. However we add that the crux of both motions was the recital hereinabove referred to in the written statement given by Gonzales to defendant on February 24, 1942. It received said statement March 2, 1942. When it saw the statement it was aware of what contentions could logically be based on the meaning of each clause therein contained. However, on May 25, 1942, both parties agreed that the statement might be introduced by either party at the time of the

trial. During the trial the plaintiff introduced said statement, including the recital that Gonzales "let the container fall." The defendant now asserts said recital was inexact and defendant should have had the privilege of showing it was inexact—in short, that the container *slipped* out of Gonzales' hands and that he did not *voluntarily drop it.* Manifestly a similar contention, differing only in degree, could be made in nearly every case. But such practice is not permissible. The defendant was bound to act with diligence. (20 Cal. Jur. 182 "New Trial," sec. 119.)

The defendant calls attention to the fact that both Jennings and Gonzales were seamen and then contends such fact shows or tends to show it acted with diligence. We think not. The fact they were seamen should have prompted both parties to duly consider such fact in getting their case ready for trial. The defendant cites and relies on *Blankman* v. *Parsons,* 73 Cal.App.218 [238 P. 728]. It is not helpful. Blankman sued on an open book account. The defendant answered and filed a cross-complaint seeking to recover an indebtedness of $1,000. The plaintiff introduced evidence he had made many payments. The defendant claimed said sums were paid on an Alaska "grub stake." Plaintiff asked an adjournment so he could call bank officials to prove the alleged debt of $1,000 had been paid. The motion was denied. Judgment was ordered in favor of the defendant. The plaintiff made a motion for a new trial. His motion was denied. On page 223 the court stated as follows: "However, in this affidavit, there is also the statement that the testimony regarding the so-called 'grub-stake' agreement was a complete surprise to the attorney for the plaintiff, *who had never heard of the existence of such an agreement; that plaintiff was in Alaska and could not furnish information to counsel to refute the testimony of defendant regarding the making of such an agreement;* that plaintiff had informed his counsel that the payments made by him were to discharge his indebtedness to decedent and as an advance to her to enable her to pay her living expenses. There was nothing in the pleadings that would have given warning to plaintiff or his counsel that this testimony would be introduced, and if it came as a surprise to plaintiff's counsel, justice and equity demanded that he be given an opportunity to dispute the claim put forth." (Italics ours.) As stated above the case does not support the defendant's contention.

■ However, we think the point may not be sustained. In the statement dated February 24, 1942, and received by defendant on March 2, 1942, George Gonzales made the statement he "let the container fall." He also stated that it "slipped from his hands." On the trial no doubt the plaintiff put his finger on the first statement and contended such was the fact, and that the defendant read the second statement and contended it stated the fact. It now contends that if a new trial is granted it will introduce the deposition which will sustain its theory and judgment must be rendered in its favor. But the conclusion does not follow. The written statement is still in existence. Whatever may be contained in the deposition may be contradicted by said written statement. In other words the deposition may be contradicted by said written statement whereas on the trial a part of said statement was used to contradict another portion of said statement. Therefore it does not appear the defendant was injured. On a new trial the jury may again say that the recital "I let the container drop" truly stated the fact. In *Brandt* v. *Krogh,* 14 Cal.App. 39, at page 59 [111 P. 275], the court said:

"Manifestly, even if plaintiff was surprised by the testimony of Krogh on this point, it cannot be said that he suffered any injury from such testimony, since Krogh acquiesced in and the court found with plaintiff's theory as to the relations between Abrams and Krogh in the transaction. 'Surprise,' as used in the statute prescribing the grounds on which a motion for a new trial may be urged, denotes 'some condition or situation in which a party to a cause is unexpectedly placed, to his injury, without any default or negligence of his own, which ordinary prudence could not have guarded against.' (Bouvier's Law Dictionary; Anderson's Law Dictionary; *McGuire* v. *Drew,* 83 Cal. 229 [23 P. 312].)"

■ When, as in the instant case, the gravamen of the action can be proved only by the testimony of one sole witness; and the parties knowing that fact plan a trial of the action in his absence, it is not clear that either party is entitled to complain of difficulties arising by reason of the absence of said witness or the delay in the arrival of his deposition.

■ The defendant complains because the trial court refused to give three instructions which it requested. One was as follows:

"The plaintiff in his complaint does not allege the expenditure of any money for medical or hospital treatment and under such circumstances you will not give any consideration to any such expense in arriving at a verdict."

The record shows no evidence on the subject was introduced. The trial court did instruct on the elements of damage. It did not mention the expenditures for medical and hospital treatment. The refusal to give said instruction was not error.

Another instruction which the trial court refused to give was as follows:

"If the defendant used reasonable care in the selection of a fit and competent person to act as ship surgeon on board the ship on which plaintiff alleges he was injured, the defendant is in no way liable for any mistakes of judgment of such ship surgeon in diagnosing the ailments of the plaintiff or in treating the same." It was completely covered by another instruction which was given. Therefore the defendant may not complain of the court's ruling.

The third request was as follows:

"The plaintiff does not allege in his complaint that by reason of his alleged injuries he contracted pneumonia, and therefore in arriving at your verdict you will not consider any damage to the defendant growing out of the contraction of pneumonia." There was no error in this refusal. The subject matter was fully covered in instructions which were given.

The judgment appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing was denied December 22, 1943, and the following opinion was thereupon rendered:

THE COURT.—There is no merit to the petitioner's point that the parties did not plan to have a trial in the absence of Gonzales or his deposition. It should be noted that both parties took the risk that Gonzales' testimony would not be available and planned accordingly. At least the evidence before the trial court upon the motion for the continuance is susceptible of that inference which inference must be accepted for the purposes of this appeal.

Petitioner's contention that a material omission was made in the statement of facts in not stating that it repeatedly

requested attorneys for plaintiff to give it the written cross-interrogatories is without merit. From the statement of facts the plaintiff took from April 6 to April 28 to prepare the cross-interrogatories. It also appears that on April 17, 1942, petitioner agreed to the setting of the cause for trial on May 25, 1942, before it had received the cross-interrogatories. The statement of facts in the opinion is, perhaps, favorable to the trial court's determination; but, as stated in the opinion, *ante*, p. 417 [143 P.2d 349], the issue before the court on diligence was a question of fact and on appeal such rulings are not disturbed if supported by substantial evidence. This substantial evidence is stated in the opinion clearly.

On appeal the evidence most favorable to the jury's verdict must be accepted as true. Although there is no direct evidence that Gonzales did not trip or make an effort to keep the container from falling, Jennings testified that he was watching Gonzales and that he did not see him do any of these things from which it can be inferred that Gonzales did not do them. Therefore the statement in the opinion is not erroneous.

The question arises as to what effect is to be given the recital contained in the paper dated February 24, 1942: "My end of the container slipped from my hands. The container slipped from my hands. . . . Jennings, as I let the container drop, let his end go. . . . The surface of the container was slippery and I was using my bare hands. Jennings had more success with the ice hooks." The defendant calls attention to the fact that the evidence produced was a writing signed in New York by Gonzales on February 24, 1942. It argues that the trial court should have construed said writing and it cites Code of Civil Procedure, sections 1858 and 2102. But the record shows affirmatively that the paper was admitted in evidence on the joint stipulation of counsel. The trial court was not asked to construe it and the trial court did not refuse to do so. The point is not presented by the record.

The petition for a rehearing is denied.

Appellant's petition for a hearing by the Supreme Court was denied January 20, 1944.