[Civ. No. 15184.   First Dist., Div. One.   Nov. 14, 1952.]

H. W. WILSON, Appellant, v. E. L. KOPP et al., Respondents.

Hugh F. Mullin, Jr., for Appellant.

Hoffman & Nagle and F. E. Hoffman for Respondents.

PETERS, P. J.—Plaintiff brought this action for damages for the loss of an eye alleged to have been caused by the negligence of defendants. The jury, by a 10 to 2 vote, brought in a verdict for defendants. Plaintiff appeals from the judg-

ment and from the order denying his motion for a new trial. In civil cases the order denying a motion for a new trial is not independently appealable, but is reviewable on the appeal from the judgment. The independent appeal from such order must therefore be dismissed.

Plaintiff, regularly employed by Pan American Airways as a flight steward, was a regular patron of the Baywood Café in San Mateo, which is owned and operated by defendants. The café has a shuffleboard for the use of its patrons, and plaintiff had used it prior to the accident. This shuffleboard was located to the right of the entrance to the café and parallel to the bar. The shuffleboard is 23 feet long and 18 inches wide and has eight legs. The playing surface is surrounded by gutters on both sides, the outer side of the gutters being 2 inches higher than the board.

On Monday, September 13, 1948, at about 5:15 p. m. plaintiff arrived at the café intending to participate in a shuffleboard tournament to be held that evening. Shortly after he arrived, McGarry, one of the proprietors of the café and one of the defendants herein, began attaching with screws towel racks to the side of the shuffleboard closest to the bar. This side of the shuffleboard is about 5 or 6 feet from the bar. While this was going on, plaintiff, who wanted to have a game with McGarry, and one Zubick, took a few practice shots on the table and then went to the bar for a bottle of beer. During this period McGarry and plaintiff engaged in some friendly banter over how hard the wood was into which McGarry, with some difficulty, was trying to insert the screws. Plaintiff testified that McGarry then handed him the screwdriver with the comment "If you think you can do it better——" McGarry testified that plaintiff said "Well, let me have a try at it," whereupon McGarry put the screwdriver on the board and plaintiff picked it up. The facts from this point on until the time of the accident are in hopeless conflict. Plaintiff testified that he took a position at the side of the board standing erect with his left foot in front of his right and grasping the screwdriver in his right hand; that he had taken about two turns with the screwdriver when both of his feet simultaneously slipped backwards out from under him because of the slippery floor; that he tried to regain his balance but fell across the shuffleboard on his chest, and that the screwdriver, which he was still holding, pierced his eyeball, which resulted in the loss of that eye. One Webber testified that sometime after the accident he was talking to McGarry and Kopp (the

other defendant) and that one of them stated that plaintiff "slipped and the screwdriver jabbed him in the eye." Kopp admitted making such a statement, but declared that it was based on what someone else had told him. This weak admission, if admission it is, is the only testimony directly corroborating plaintiff's story that the slipping of his feet caused the accident.

It was the theory of defendants that plaintiff's feet did not slip upon the floor, but that as he started to use the screwdriver he braced one foot on the bar rail in back of him and had one foot on the floor when the screwdriver slipped upward, into his eye, scratching the board as it came up. Lisabeth Kopp, wife of defendant Kopp, so testified. On cross-examination she admitted that when plaintiff's motion forward occurred she could see but one foot of plaintiff, but she was positive that that foot did not slip or leave the floor. The other foot was braced against the bar rail.

McGarry also testified that when plaintiff first started to use the screwdriver he stated "I don't have enough beef on it," whereupon he braced one foot against the bar rail. This bar rail, of course, projected out from the base of the bar.

The son of defendant Kopp, then about 12 years of age, was standing about 2 feet from plaintiff. He testified that plaintiff's feet did not slip, that just prior to the accident plaintiff braced one foot on the bar rail and the screwdriver slipped when pressure was applied. The witness Zubick, who was called by the plaintiff, after the accident had told an investigator employed by defendants that the accident was caused by the screwdriver slipping. Zubick admitted making the statement, but testified that he was under the influence of liquor when it was made. This was denied by the investigator.

In rebuttal plaintiff reiterated that his feet and not the screwdriver slipped, and also testified as to an experiment he had made at the café after the first day of trial. He stated that if one of his feet had been braced against the bar rail, his body would have been so extended that he could not possibly have fallen across the shuffleboard at the time of the accident, but would have fallen to the floor. All the evidence is to the effect that plaintiff fell across the shuffleboard and did not fall to the floor.

Thus on the issue as to how the accident happened, that is, whether caused by plaintiff's feet slipping on the slippery floor or whether caused by the screwdriver slipping, the evidence

was in sharp and irreconcilable conflict. This is equally true as to the evidence relating to whether or not there was wax on the floor, and whether or not defendants knew or should have known of the presence of such wax. The plaintiff, who was familiar with the premises, stated that he saw nothing different in the condition of the floor on the day of the accident than existed on other occasions. Admittedly, wax is constantly used to polish with an electric buffer the surface of the shuffleboard. Excess wax was either brushed off the board or collected with a vacuum cleaner. The pucks used in the game would slide off the board and bring some wax with them so that wax would collect in the gutters. There were unplugged holes in the gutters through which the excess wax would be pushed into a receptacle below. There was one such open hole a very short distance—18 to 20 inches, according to plaintiff, or 12 to 15 inches, according to Kopp—from the bracket upon which plaintiff was working when the accident happened. Wax was also kept available for the players. They would dip a towel into the wax and then use the towel to wipe off excess moisture from their hands. Wax would thus fall on the floor unless the hands were wiped over the board. The brackets on the sides of the board were being installed to hold these towels which were furnished by the café. The towels were also used to wipe off the board and to wipe the wax out of the gutters. McGarry admitted that wax could fall through the holes onto the floor. Witness Zubick testified that the floor was slippery the night of the accident, and that about a month before the accident he told either Kopp or McGarry that the floor was slick, and that "somebody is going to break their neck on that floor." He also testified, however, that the slippery condition was caused by the fact that the entire floor was waxed and not because of wax falling from the shuffleboard, and that he did not know of any other person who had slipped. Witness Webber testified that he examined the area around the board at 6 p. m. the night of the accident, which had occurred at 5:15 p. m., that he then found wax on the floor under the hole in the gutter closest to the bracket here involved, and that such wax was on the floor along the side of the board in such a position that it might be scuffed by those passing between the board and the bar. McGarry testified that any wax that might fall through the holes would remain under the board. Webber, who at the time of trial (April of 1951) was employed at the café, also testified that whenever the floor was swept there was excess

wax on the floor. McGarry testified that he never saw wax on the floor. This was corroborated by Kopp and by the bartender at the café. McGarry also testified that there had been no complaints made to him about the condition of the floor, denied that Zubick had complained to him, and stated that there had been no prior falls. Kopp and the bartender also testified that no complaints had been made to them, and that there had been no prior falls. Kopp did testify that rubber mats were placed at the playing end of the shuffleboard to keep the players from slipping when they leaned over the board to make their shots, and that players did slip on these mats when dirt or wax got under them.

The general floor of the café was cleaned under contract by a janitorial service, and had been cleaned the morning of the accident. The shuffleboard was maintained by a company who generally cleaned it on the day of a tournament, and normally cleaned it on Monday, Wednesday and Friday of each week. The accident happened on a Monday.

After the jury had rendered its verdict in favor of defendants plaintiff moved for a new trial, supporting his motion with five affidavits. Bernard Brandau averred that prior and after the accident he had slipped on the floor or on the mats at the end of the shuffleboard, and that on several occasions of unknown date he had observed powdered wax on the floor in the vicinity of the holes in the gutters.

The plaintiff averred that the screwdriver introduced by defendants at the trial was not the screwdriver used by him at the time of the accident; that the screwdriver then used was shorter than the one introduced and did not have a broken point; that after the trial he discovered, in a conversation with Michael Welch, the whereabouts of the screwdriver actually used by him, and that such screwdriver is submitted with the affidavit of Welch. This affiant also deposes that these facts were not known at the time of the trial and could not, with due diligence, have been ascertained at that time.

One Archie Scraper, a cook at the café at the time of the accident, deposed that he was not on duty at the time of the accident but that he came into the café shortly after the accident occurred, and that defendant Kopp then told him that Lisabeth Kopp, at the time of the accident, was in the kitchen. Mrs. Kopp had testified at the trial that she was at the end of the bar and saw that plaintiff's foot did not slip. Scraper further averred that while working at the

establishment he had never seen the screwdriver defendants introduced into evidence, but that there was a larger and longer screwdriver customarily kept on a shelf in the kitchen. This is, apparently, a third screwdriver, and has no relation to the present controversy. Scraper further deposed that, prior to the accident, Welch brought to the café the shorter screwdriver referred to in plaintiff's affidavit. This affiant further deposed that prior and after the accident he had slipped on the floor both at the end of the shuffleboard and on the side closest to the bar, and that he had observed wax on the floor under the holes in the shuffleboard.

Welch, a dishwasher at the café at the time of the accident, averred that he was required to make minor repairs around the premises; that there was in the kitchen the large screwdriver referred to by Scraper; that this large screwdriver was not the one introduced by defendants at the trial; that he had brought some of his own tools to the café; that among these tools was the shorter screwdriver referred to by plaintiff in his affidavit and that he had removed all of his tools from the premises when he left his employment with the café. This screwdriver was submitted as an exhibit with this affidavit. This affiant further deposed that prior to and after the accident he had slipped on the floor while playing shuffleboard at the end of the table, and that he had observed wax on the floor.

The attorney for plaintiff averred that, in preparation for the trial, he had interviewed all witnesses that he was advised knew anything about the accident; that he had used reasonable diligence to ascertain the identity of all witnesses; that he did not learn of the identity or nature of the testimony of Brandau, Scraper or Welch until after the date of the trial; and that he did not know of the existence of the screwdriver introduced at the trial until defendants produced it at the trial.

McGarry filed a counteraffidavit denying, on information and belief, all the allegations of the plaintiff's five affidavits. The trial court denied the motion for a new trial.

One of the major contentions of plaintiff on this appeal is that the trial court abused its discretion in denying the motion for a new trial on the grounds of newly discovered evidence, accident and surprise.

Under section 657 of the Code of Civil Procedure a new trial may be granted on the ground of "Accident or surprise, which ordinary prudence could not have guarded against" or

on the ground of "Newly discovered evidence, material for the party making the application, which he could not with reasonable diligence, have discovered and produced at the trial."

Of course, the question is whether, on the affidavits submitted, the trial court was compelled to grant the new trial, not whether the affidavits would have supported an order granting the new trial. This is a field in which the trial court has a broad discretion, so that the precise question presented is whether the trial court, as a matter of law, abused that discretion in denying the motion. So far as the ground of newly discovered evidence is concerned, it has consistently been held that it does not constitute an abuse of discretion as a matter of law to deny the motion when the new evidence is merely cumulative. (*Carpenter* v. *Gibson*, 80 Cal.App.2d 269 [181 P.2d 953]; *Sabathe* v. *Gale*, 83 Cal.App.2d 182 [188 P.2d 68]; *Stanley* v. *Columbia Broadcasting System*, 35 Cal. 2d 653 [221 P.2d 73, 23 A.L.R.2d 216].) It is therefore necessary to review the evidence introduced at the trial in reference to the screwdriver.

The screwdriver introduced into evidence is a heavy screwdriver, 10 inches long, with a plastic handle and a broken point. The Welch screwdriver is a very light screwdriver 6¾ inches long, with a plastic handle and a good point. Before any screwdriver was introduced into evidence plaintiff testified that the screwdriver he was using was about 10 inches long, and was apparently new, with a yellow composition handle. This is a pretty good description (except for the broken point) of the screwdriver introduced by defendants as the screwdriver involved in the accident, and would be a very inaccurate description of the Welch screwdriver later discovered.

The screwdriver used at the trial was introduced during the testimony of defendant Kopp, who testified that it was the screwdriver used by plaintiff at the time of the accident; that it had been in his possession ever since the accident; and that it had in no way been altered since the accident. McGarry also testified that the screwdriver introduced was the one used by plaintiff. The plaintiff, in rebuttal, testified as to the test made by him after the trial, admitted that during this test he did not use any screwdriver, and was then shown the screwdriver introduced into evidence and asked if that was the screwdriver involved. He replied: "I don't

think that is the screwdriver," and when asked if it was about the size of the screwdriver used, he replied: "Approximately, maybe an inch or two longer," that the one he had used "was a smaller screwdriver." The Welch screwdriver is so different in size, weight and length from the one introduced into evidence, that it is highly improbable that plaintiff would have described it as "approximately" the same size as the one introduced.

There was no abuse of discretion in denying the motion for a new trial because of the claimed newly discovered evidence in reference to the Welch screwdriver. Not only could the trial court have believed that the affidavits did not show due diligence, but it is obvious that the proffered evidence was merely cumulative, in that it would strengthen plantiff's position on a conflict already existing in the evidence produced at the trial. This, under the rule of the authorities already cited, warranted the trial court in denying the motion. Insofar as the new screwdriver would impeach defendants' testimony concerning the screwdriver introduced into evidence, it is the rule that newly discovered impeaching testimony alone does not compel the granting of a new trial. (*Anderson* v. *Freis*, 61 Cal.App.2d 159 [142 P.2d 330].) Of course, insofar as the affidavits disclose further evidence of slipping episodes, the proffered evidence is clearly cumulative and does not compel the granting of the motion.

As to the denial of the motion based on accident and surprise, that too was well within the legal discretion of the trial court. While a trial court may grant a motion for a new trial on these grounds where it appears that a party is misled by a witness as to the evidence expected from him, or is unexpectedly presented with claimed perjured testimony, the court is not compelled to grant the motion where the evidence relates to an issue that is obviously within the issues to be tried. In *Rudin* v. *Luman*, 53 Cal.App. 212, at page 221 [199 P. 874], the court stated the proper rule as follows: "The 'surprise' mentioned by the statute must be the result of some fact or circumstance or situation occurring at the trial which could not in the nature of the case reasonably have been anticipated would arise and which is of such importance or magnitude in its influence upon the result arrived at from the trial as to have produced as against him or his rights injury or damage. The mere giving of testimony contrary to the interests of a party, or even the fact that false testimony has thus been given, although

wholly unexpected by the party against whom it is given, will not itself always operate as a predicate for the awarding of a new trial of the issue.''

■ Moreover, it is to be noted that at no time during the trial did the plaintiff claim that he was surprised by the production of the screwdriver, nor did he request a continuance to secure opposing evidence. These factors (see *Kauffman* v. *De Mutiis*, 31 Cal.2d 429 [189 P.2d 271]), while not conclusive (see *Whitfield* v. *Debrincat*, 18 Cal.App.2d 730 [64 P.2d 960]), could be weighed by the trial judge in considering the motion. The fact that the proffered testimony would be cumulative is also a factor that the trial court could consider. It is by no means certain that the proffered evidence is of such a nature that, if accepted, a different result would have been reached by the jury. That, too, was a matter the trial court was entitled to consider in determining the motion. (*Jennings* v. *American President Lines*, 61 Cal.App.2d 417 [143 P.2d 349, 144 P.2d 54]; *Whitfield* v. *Debrincat*, 18 Cal.App.2d 730 [64 P.2d 960].) Under these circumstances there was no abuse of discretion in denying the motion for a new trial.

■ The plaintiff's next major contention is that the trial judge was guilty of prejudicial misconduct warranting a reversal. Plaintiff lists a series of occurrences, including certain rulings on evidence, that occurred during the trial, and contends that they demonstrate a persistent hostility towards plaintiff and his counsel and an undue friendliness towards defendants and their counsel. No useful purpose would be served by setting forth these contentions in detail. Most of the occurrences are trivial in nature. The rulings on evidence were not prejudicial. It is true that occasionally the trial judge was irascible, and occasionally made a comment or two that well could have been left unsaid, but not only were no assignments of error made, but the record certainly does not demonstrate such a persistent attitude of hostility that a reversal is required. We have read the entire record. We believe it demonstrates that plaintiff received a fair trial, and that the remarks and actions of the trial judge of which complaint is made could not possibly have affected the verdict. It should also be pointed out that the trial court correctly instructed the jury that the court expressed no opinion on the evidence; that it was the jury's function to determine all questions of fact; that statements by court and counsel

outside the record should be disregarded by the jury; that if the "Court made any statement which would seem to you to reflect on any counsel or any witness or seemed to you to indicate that the court had some opinion upon the merits of the case, or upon some fact or issue involved in the case, then, you are admonished to disregard such statement, if such statement was made, in reaching a verdict." These assignments of error are without merit. (*Germ* v. *City & County of San Francisco,* 99 Cal.App.2d 404 [222 P.2d 122].)

Plaintiff also complains that he was denied a fair trial because the trial judge limited each side to 40 minutes argument to the jury. Plaintiff made no request for further time in the trial court, and made no complaint of the limitation. At the close of the trial the judge asked counsel how long they wanted to argue. Counsel for plaintiff replied: "As short as I can, consistent with the case. I am not going to take any more time than is necessary." The court replied that it would like to know how long was desired and asked if half an hour would be sufficient. Defendants' counsel replied: "That should be enough," whereupon the court stated: "I will allow 40 minutes a side." Plaintiff's counsel remained silent and neither then nor later requested further time. This being so, the contention that he was unduly restricted is without merit.

The contentions that the evidence compels a holding, as a matter of law, that defendants were negligent, and that plaintiff was not guilty of contributory negligence, need not seriously be considered. The evidence set forth in this opinion demonstrates that these were fact questions properly left to the jury.

The last major contention of plaintiff is to claim error in the giving or refusing to give instructions. The trial court refused to give several instructions offered by plaintiff but, in most cases, did give other instructions expressing the concept and fully covering the subject matter involved. Of course, neither party is entitled to have the instructions framed in his particular language. As long as the instructions cover the issues involved and correctly and fully state the law, the fact that either party would prefer that they be otherwise expressed is immaterial. We have read the entire charge, including the instructions refused or modified. The only possible criticism of the charge as a whole is that there does seem to be an undue number of the instructions

which, while correctly stating the rule of law involved, are worded in the negative, that is, that are worded in words of nonrecovery by plaintiff or of nonliability of defendants. It would have been fairer to both sides had comparable plaintiff's instructions been given, or had these instructions been framed in a more objective manner. However, the instructions given did correctly state the law and amply covered the subject matter involved. We do not think that prejudicial error was caused by the form of these instructions.

■ There was one instruction given that was erroneous. The court, at defendants' request, gave the following instruction: "I instruct you that the proprietors of a place of business are bound to exercise only the degree of care for the safety of their patrons that would be expected of an ordinarily careful and prudent person under like circumstances, and their duty is fulfilled when they make the place as little dangerous as such a place can reasonably be made, having regard to the purposes for which said premises are intended to be used." Plaintiff properly complains of that portion of the instruction that told the jury that it was only the duty of a proprietor of a place of business towards his patrons to maintain the premises "as little dangerous as such a place can reasonably be made." It was no doubt error to thus suggest that the premises can be a "little dangerous" to the knowledge of the proprietor without imposing liability. But the ambiguity in this instruction was undoubtedly clarified and cured by several other instructions given on the duty of proprietors. Just prior to the challenged instruction the trial court gave two instructions on the same subject matter that had been suggested by plaintiff. The first told the jury that one who enters a place of business to purchase a commodity or service is an invitee, and that the "'law imposes on the owner of such an establishment" the duty of exercising ordinary care so as not unnecessarily to expose the invitee to danger or accident, and, to that end, to keep in a reasonably safe condition the aisles, passageways and general store premises made available for the invitee's use.

The second instruction given at plaintiff's request, and which immediately precedes the challenged instruction, told the jury that: "In the absence of appearances that caution or would caution a reasonably prudent person in like position, to the contrary, the invitee has a right to assume that the premises he was invited to enter are reasonably safe for

the purpose for which the invitation was extended, and to act on that assumption."

Immediately following the challenged instruction the court correctly defined the duty of a proprietor as follows: "You are instructed that the proprietor of a building who invites others to enter said building owes to such persons who thus enter, the duty to have the building in a reasonable [sic] safe condition; he is not an insurer of such persons, nor does the mere occurrence of injury on his premises create any presumption of negligence on his part. His responsibility is not absolute and he is only required to use ordinary care for the safety of persons he invites to come upon his premises. . . ."

In view of these correct instructions it is quite obvious that the ambiguous language used in the challenged instruction could not have misled the jury. The error that occurred was clearly cured by the other instructions. (*Wills* v. *J. J. Newberry Co.*, 43 Cal.App.2d 595 [111 P.2d 346].)

The other contentions made by plaintiff in reference to the instructions are without merit.

The appeal from the order denying the motion for a new trial is dismissed; the judgment is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.